David A. Schiller, TBN 00794601
The Schiller Law Group, PLLC
2309 W. Parker Road
Plano, TX 75023
Tel: (469) 467-9200
Fax: (469) 467-9600

ATTORNEY FOR DEFENDANT

**UNITED STATE DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**WHITE PLAINS DIVISION**
-----------------------------------------------------------X
TRIBORO QUILT MANUFACTURING
CORPORATION,                                                          INDEX NO. 10-CV-3604

        **Plaintiff**                                       <u>**DEFENDANT COUNTER**</u>
<u>**CLAIMANT'S RESPONSE TO**</u>
<u>**COMBINED MEMORANDA OF**</u>
<u>**LAW IN OPPOSITION TO**</u>
<u>**DEFENDANT'S MOTION FOR**</u>
<u>**SUMMARY JUDGMENT AND**</u>
<u>**RESPONSE TO PLAINTIFF'S**</u>
<u>**CROSS MOTION FOR**</u>
<u>**SUMMARY JUDGMENT**</u>

-   **against –**

    **LUVE LLC,**                                          <u>**ORAL ARGUMENT**</u>
<u>**REQUESTED**</u>

      **Defendant**
_____X

<u>**DEFENDANT/COUNTER-CLAIMANT'S RESPONSE/REPLY TO COMBINED**</u>
<u>**MEMORANDA OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR**</u>
<u>**SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFF'S CROSS MOTION FOR**</u>
<u>**SUMMARY JUDGMENT**</u>

Pursuant to Rule 56, Federal Rules of Civil Procedure, Luve LLC,

Defendant/Counter-Claimant ("Luve"), moved for Summary Judgment as to Plaintiff's

claims and causes of action and for Partial Summary Judgment as to its own claims for

breach of contract against Plaintiff. Plaintiff filed its response and cross motion for

Summary Judgment. Luve now files its reply to Plaintiff's response and its response to Plaintiff's cross motion for Summary Judgment and in support of would show as follows:

## I.  RELIEF REQUESTED

Luve moves for summary judgment as to all of Triboro Quilt Manufacturing Corporation's ("Triboro") claims and for partial summary judgment as to its counter-claims that Triboro breached the parties' contract and denial of Triboro's Motion for Summary Judgment.

## II.  INTRODUCTION

Luve incorporates by reference its motion for summary judgment including exhibits attached thereto in its response to Triboro's cross motion for summary judgment as if fully set forth herein.

Triboro admits that it did not suffer damages but only has suffered speculative damages if certain other events were to occur. (Dkt#68 at page 34-35). Triboro admits that it breached 3.2.4 of the ELA (Dkt#68 at page 27), it breached 7.1 of the ELA (Dkt#68 at page 23), and it breached 7.2 of the ELA (Dkt#68 at page 30-31). Triboro argues that its breaches of those provisions were not material and were only technical breaches. Triboro argues that the court should ignore language in 6.1 of the ELA regarding the parties' joint goal of maximizing the licensed mark in order to get around any obligation to maximize the licensed mark. Triboro argues that Luve, by mitigating its damages post termination, has somehow waived its right to terminate the ELA. Triboro fails to grasp that Luve is not moving for summary judgment on the issues of materiality and damages but only seeking a partial summary judgment on breach, leaving materiality and damages to be determined by the jury. In its Cross Motion for Summary

Judgment, Triboro seems to be seeking a No Evidence Summary Judgment. Triboro argues that it is entitled to summary judgment because there is no evidence that its breaches were material or that the items it misappropriated, converted or were unjustly enriched by, were novel or unique. Triboro also argues that there was no confidential relationship between the parties and that it did not exercise dominion over Luve's better bath line. As set out in this response/reply Triboro's arguments are without merit and do not prevent this Court from granting Luve's summary judgment as to Triboro's claims and its partial summary judgment as to its own claims for breach of contract. Finally, material issues of fact exist, that prevent the granting of Triboro's cross motion for summary judgment.

## III.  OBJECTIONS

Luve objects to those portions of Cameron Reuber's declaration where he asserts that he has reviewed the entire record in this case and that there is no evidence of certain facts. (See Reuber declaration at paragraphs 12-21) Such statements are inadmissible as they are conclusory and self-serving. Further, those statements do not identify what Mr. Reuber, or Triboro, for that matter, considers to be the "record" and is therefore speculative at best, and not admissible. Luve objects to exhibits C and I attached to the Reuber Declaration as they have not been properly authenticated and therefore are not admissible.

## IV. ADDITIONAL SUMMARY JUDGMENT EVIDENCE

Luve relies on the summary judgment evidence filed in support of its motion for summary judgment and the following additional evidence:

1.    Deposition testimony of Amy Seckinger;

2.      Declaration of Amy Seckinger;

3.      Documents produced by Triboro acknowledging novelty and uniqueness

4.      Deposition testimony of Darrell Farrell;

5.      Deposition of Richard Williams; and

6.      Declaration of Don Smith with Exhibits.

## V.  SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure states as follows:

A party may move for summary judgment, identifying each claim or defense — or he part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

In this case the undisputed facts and evidence establishes that there are no "genuine disputes as to any material fact" upon which Luve relies upon to establish that it is entitled to summary judgment. The purpose of summary judgment is to pierce the pleadings and determine if there is a genuine need for trial. *Matsushita Elec. Indus. V. Zenith Radio, Corp.*, 475 U.S. 674, 587 (1986). Summary Judgment is proper if the pleadings, discovery, depositions and supporting evidence show that there are not genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Luve is entitled to judgment as a matter of law.

## Reply to Triboro's Response

**Triboro Still Does Not Have Damage Evidence:**

Triboro does not have any damage evidence or testimony and has admitted so. Triboro, in its response, has stated as follows:

Indeed as Triboro's owner Mr. Joel Kaplan, made clear during his deposition in this action, "**if** [Triboro was] to suddenly stop selling the [Bath Luve] and the [ELA was] terminated at that point, in fact, the **damages would have been** in excess [of $75,000] because of inventory risk, goodwill, market position, lost placement … (Dkt#68 at page 34) (emphasis added)

As Mr. Kaplan testified, **if** the ELA was not in effect, and Triboro could not sell the Bath Luve, Triboro's **damages would have been** "in excess" of $75,000. (Dkt#68 at page 35) (emphasis added)

Therefore, Triboro **will be** severely damaged **in the absence of** any agreement and one need only look at some of the recent patent infringement awards (in the millions of dollars) to realize that any **damage suffered by Triboro would** easily be in multiples of the $75,000 jurisdictional minimum. (Dkt#68 at page 35) (emphasis added)

It is easy to see that Triboro's entire arguments regarding damages are that Triboro might possibly suffer some damages if certain other contingent things were to occur. Such speculative damages are not sufficient to establish damages, much less the jurisdictional limits required for diversity jurisdiction. With respect to proving such damages, it is well established under New York law that a plaintiff must prove the existence of damages with certainty in order to recover for breach of contract. *See S & K Sales Co. v. Nike, Inc.,* 816 F.2d 843, 852 (2d Cir.1987); *Lexington Products Ltd. v. B.D. Communications, Inc.,* 677 F.2d 251, 253 (2d Cir.1982); *Contemporary Mission, Inc. v. Famous Music Corp.,* 557 F.2d 918, 926 (2d Cir.1977). While scientific rigor in the calculation of damages is not required, <u>*Lexington Products Ltd.,* 677 F.2d at 253,</u> "New York law does not countenance damage awards based on `[s]peculation or conjecture.'" *Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.,* 946 F.2d 1003, 1010 (2d Cir.1991) (quoting *Berley Indus., Inc. v. City of New York,* 45 N.Y.2d 683, 687, 412 N.Y.S.2d 589, 591, 385 N.E.2d 281, 283 (1978)). The "ifs", "would haves" and maybe's that Triboro relies on are nothing more than the kind of "speculation or

conjecture" that are not allowed. It is clear that Triboro's lawsuit was filed, and has at all times been, without merit and frivolous because Triboro has no damages it can establish it suffered, much less damages in excess of the jurisdictional limits of this court. As a result, Luve is entitled to a summary judgment on all of Triboro's causes of action because it has no damage evidence.

This possible, could have, would have, conjecture and speculative damages when juxtaposed to the undisputed testimony of the Plaintiff's owner and corporate representative makes it clear that Luve, LLC is entitled to summary judgment.

It is undisputed that Triboro has not suffered any damages. Triboro's own Vice President of Marketing, Richard White, has testified that Triboro has not suffered any damages. (See, Deposition of Richard White, Exhibit 3 to Luve's MSJ; Deposition of Richard White, Corporate Representative of Triboro, Exhibit 12, pg 85, lines 19-25; pg 86, lines 2-5; pg 87, lines 10-2; pg 88, lines 2-25; pg 89, lines 2-13; pg 90, lines 16-2; pg 91, lines 2-4; Deposition of Joel Kaplan, Exhibit 13, pg 97, line 3 – page 98, line 11; page 100, line 20 – pg 102, line 3; pg 103, line 5-18; pg 107, line 10 – page 108, line 7; pg 109, line 8 – pg 110, line 16; pg 109, line 2 – page 110, line 13; pg 115, line 17 – pg 116, line 23; pg 117, line 22 – pg 118, line 8).  Luve has not in any way prevented Triboro from manufacturing or selling any product under the ELA. (See, Deposition of Richard White, Exhibit 3 to Luve's MSJ).  Without, any damages, Luve is entitled to judgment as a matter of law since Triboro has admitted that it cannot meet that essential element of its cause of actions. As set forth above, damages are a necessary element of Triboro's causes of action against Luve. *First Investment Corp. v. Liberty Mutual Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998). In order to recover for any of its

claims, Triboro must be able to prove that it suffered damages. There is no dispute that Triboro has not suffered any damages. Triboro's own President, Joel Kaplan and Vice President of Marketing, Richard White, (individually and as corporate representative for Triboro) have testified that Triboro has not suffered any damages. (See, Deposition of Richard White, Exhibit 3 to Luve's MSJ, pg 270 line 5 to 9, Exhibit 3; Deposition of Richard White, Corporate Representative of Triboro, Exhibit 12 to Luve's MSJ, pg 85, lines 19-25; pg 86, lines 2-5; pg 87, lines 10-2; pg 88, lines 2-25; pg 89, lines 2-13; pg 90, lines 16-2; pg 91, lines 2-4; Deposition of Joel Kaplan, Exhibit 13 to Luve's MSJ, pg 97, line 3 – page 98, line 11; page 100, line 20 – pg 102, line 3; pg 103, line 5-18; pg 107, line 10 – page 108, line 7; pg 109, line 8 – pg 110, line 16; pg 109, line 2 – page 110, line 13; pg 115, line 17 – pg 116, line 23; pg 117, line 22 – pg 118, line 8).  Luve has not in any way prevented Triboro from manufacturing or selling any product under the ELA. (See, Deposition of Richard White, Exhibit 3 to Luve's MSJ, pg 269, lines 12 through page 270 line 4, Exhibit 3). Triboro still cannot point to a single sale it lost or any action by Luve which caused any damages to Triboro. (See, Deposition of Richard White, Exhibit 3 to Luve's MSJ, pg 270, lines 5 to 9, Ex. 3; Deposition of Richard White, Corporate Representative of Triboro, Exhibit 12 to Luve's MSJ, pg 85, lines 19-25; pg 86, lines 2-5; pg 87, lines 10-2; pg 88, lines 2-25; pg 89, lines 2-13; pg 90, lines 16-2; pg 91, lines 2-4; Deposition of Joel Kaplan, Exhibit 13 to Luve's MSJ, pg 97, line 3 – page 98, line 11; page 100, line 20 – pg 102, line 3; pg 103, line 5-18; pg 107, line 10 – page 108, line 7; pg 109, line 8 – pg 110, line 16; pg 109, line 2 – page 110, line 13; pg 115, line 17 – pg 116, line 23; pg 117, line 22 – pg 118, line 8). All of these detailed

admissions that Triboro has not suffered any damages are not counter balanced by - we could have suffered damages if other things had happened.

**Triboro Confuses the Rescission with the Terms of the ELA**

Triboro spends a lot of time arguing rescission cases for the proposition that its breaches were not willful, however the ELA the parties executed states the terms and conditions under which Luve was authorized to terminate the ELA. The ELA at 12.2.3 states as follows:

> 12.2.3 <u>Termination for Breach</u> In the event a **party breaches this Agreement in a material respect**, it shall have thirty days after receiving written notice of said breach from the other party in which to cure said breach. If the party receiving such notice fails to cure in such 30-day period, the other party may immediately terminate this Agreement upon written notice. (emphasis added)

There is no willful requirement in the termination provision of the ELA. Triboro asks this court to rewrite the ELA to impose such a requirement to avoid Summary Judgment. Triboro must do so since it has admitted it breached multiple provisions of the ELA on more than one occasion. Even if willfulness is applied in light of the testimony of Triboro's owner, there exists a fact issue on willfulness, in his March 28, 2013, deposition testimony, Joel Kaplan clearly testifies that failure to mark both the product and the packaging is "…not just a mistake, but a serious mistake."  (Kaplan Deposition, Exhibit 13 to Luve MSJ, pg 85 line 21 through page 87, line 6).

**Triboro Admits that It Breached 3.2.4, 7.1 and 7.2 of the ELA and Materiality**

Triboro admits that it breached 3.2.4 of the ELA (Dkt#68 at page 28), it breached 7.1 of the ELA (Dkt#68 at page 23), and it breached 7.2 of the ELA (Dkt#68 at page 30-31). Triboro argues that its breaches of those provisions were not material and were just

technical breaches. Luve did not seek a summary judgment on materiality or damages.

It is not all that surprising that Triboro would argue that its admitted breaches were not

material, because it is the only argument left to Triboro. The Second Circuit has stated

that materiality in a breach of a contract case can be found if there are cumulative

breaches as follows:

> It follows that if Merrill Lynch breached one or more warranties and the
> cumulative effect of such breaches was material, it did not substantially perform
> its side of the deal. Further, while we do not dispute that Merrill Lynch's delivery
> and Allegheny's two-year ownership of GEM represented advanced performance
> of the contract in a chronological sense, the trial court was required to address
> appellant's argument that GEM turned out to be substantially different from what
> the parties had bargained for, thereby "defeat[ing] the object of the parties in
> making the contract," *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc*., 500 F.
> 3d 171 (2d Cir. 2007)(citing *Frank Felix Assocs. v. Austin Drugs, Inc.,* 111 F.3d
> 284, 289 (2d Cir.1997)).

There is little doubt that Triboro has engaged in a pattern of breaches of contract

that pursuant to the Second Circuit in *Merrill Lynch*, can establish materiality.

Regardless, the deposition testimony of Amy Seckinger (Exhibit 1) and the Declaration

of Amy Seckinger (Exhibit 2) establish at a minimum fact issues on materiality for a jury

to determine. At this stage of the briefing however, there is no evidence from Triboro

that its breaches were not material. In fact the Plaintiff only offers argument that its

breaches were not material without any evidence to support same. However, the issue

of materiality does not prevent this Court from granting a partial summary judgment that

Triboro breached the ELA, leaving for the jury to decide materiality and damages. The

admission of breach and the fact issues related to materiality, if any, do prevent the

Court from granting summary judgment to Triboro on its cross motion.

"A fundamental principle of contract law provides that the material breach of contract by one party discharges the contractual obligations of the non-breaching party. *Bear Stearns Funding, Inc. v. Interface Group,* 361 F.Supp 2d 283, 290 (S.D. N.Y. 2005); *See also, Medical Malpractice Ins. Ass'n v. Hirsch*, 114 F.3d 379, 387 (2d Cir. 1997), "Under New York law, for a breach of a contract to be material, it must go to the root of the agreement between the parties." *Frank Felix Associates, Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997). Luve has provided proof of materiality by and through the deposition testimony of Amy Seckinger and her declaration. (See, Response Exhibit 1 and 2)

Further, in Ms. Seckinger's deposition as an organizational representative for Luve, LLC, she testified that that due to recent audits, serious questions exist as to the reliability of Triboro's royalty payments and that Triboro had failed to pay royalty payments when due.  (Exhibit 1) Such failures are material as set forth by the Second Circuit as follows:

> A party's failure to make required payments as required by an Agreement has been held to be a material breach as a matter of law, and would thus authorize defendant **Boyden's** termination of the contract. *ARP Films, Inc.,* 952 F.2d at 648-49, (finding that "failure to tender payment is generally deemed a material breach of a contract ..." (citing *Schneider v. Dumbarton Developers, Inc.,* 767 F.2d 1007, 1014 (D.C.Cir.1985); *Jafari v. Wally Findlay Galleries,* 741 F.Supp. 64, 67-68 (S.D.N.Y.1990); *Truglia v. KFC Corp.,* 692 F.Supp. 271, 276-77 (S.D.N.Y. 1988), aff'd without op., 875 F.2d 308 (2d Cir.1989)).

**Triboro Seeks to Ignore Portions of Paragraph 6.1 of the ELA**

Triboro argues that the Court should ignore the language in paragraph 6.1 of the ELA where it clearly and unambiguously states: "The prosecution of the Licensed mark is at Triboro's sole discretion as to how best prosecute the application to the extent such

protection is in the party's joint goal of maximizing the value of the licensed mark." (See, ELA at paragraph 6.1). Triboro seem to argue that even though the agreement clearly says that there is a joint goal to maximize the value of the licensed mark that no such goal really existed. A strange argument since Triboro admits that "Under New York law a contract "should be construed so as to give full meaning and effect to <u>all</u> of its provisions" *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005).(Dkt#68 at page 18). Although Triboro agrees that a proper interpretation of the ELA would require this court to give meaning to all the terms, Triboro asks the court to ignore the language establishing a joint goal to maximize the licensed mark. Incredibly Triboro argues that the language of 6.2 somehow does away with the requirement of maximizing the value of the licensed mark. However, such interpretation runs afoul the holdings of the very cases on which Triboro relies upon. Following *LaSalle* and the other cases cited by Triboro, a proper interpretation of 6.1 and 6.2 would mean that Triboro has discretion to substitute or change the Licensed Mark, as it actually did in this case. (See Exhibit 1). Triboro used Bath Luve as the mark instead of Luve and therefore when Triboro attempted to get the trademark Luve it was rejected because the use in commerce was "Bath Luve" and not "Luve". Triboro can hardly argue that because it failed to use the right mark that it does not have to maximize the value of the mark it did decide to use in its "sole discretion" per 6.2.

**Luve Terminated the Contract and Did Not Elect to Keep the Contract**

Luve, LLC has a duty to mitigate its damages once it terminated the ELA. Amazingly, Triboro takes Luve's mitigation of its damages and tries to craft an argument that is nonsensical. Essentially Triboro argues that Luve really did not terminate the ELA

because after it terminated the ELA it did not interfere with Triboro's business operations, but instead filed counterclaims, and was content to seek justice in the Court system. The Second Circuit has stated as follows:

> New York's courts[3] adhere to the universally accepted principle that a harmed plaintiff must mitigate damages. _Wilmot v. State,_ 32 N.Y.2d 164, 168-69, 344 N.Y.S.2d 350, 352-53, 297 N.E.2d 90, 92-93 (1973); _Cornell v. T.V. Development Corp.,_ 17 N.Y.2d 69, 74, 268 N.Y.S.2d 29, 33, 215 N.E.2d 349, 351-52 (1966). _See also Katz Communications v. Evening News Association,_ 705 F.2d 20, 26 (2d Cir.1983) (applying New York law); _Courtland v. Walston & Co.,_ 340 F.Supp. 1076, 1079-80 (S.D.N.Y.1972) (applying New York mitigation doctrine to sale of securities). The district court properly applied New York's mitigation doctrine in this trial. When plaintiffs learned in 1979 that Janeway intended to breach the contract, they were not at liberty to hold their stocks until the agreed tender date of October 1981. They were obligated to take whatever reasonable actions they could to minimize their damages. _Courtland,_ 340 F.Supp. at 1080; _Wilmot,_ 32 N.Y.2d at 168-69, 344 N.Y.S.2d at 353, 297 N.E.2d at 92. _AIR ET CHALEUR, S.A., v. Eliot JANEWAY_, 757 F.2d 489 (2d Cir. 1985)

Triboro argues incredibly that because Luve did not engage in any self-help remedies and cashed royalty checks after it terminated the ELA that it somehow did not in fact terminate the contract. Not only does this argument fly in the face of the real facts in this case, i.e. that Luve terminated and Triboro sued it for wrongful termination, the cases that Triboro relies on for this argument do not support Triboro's position. In particular Triboro relies predominantly on _V.S. International, S.A._ to support its arguments that Luve has made some election to continue the contract. However, the court in _V.S. International, S.A._ stated as follows:

> In the instant case, plaintiffs never attempted to terminate the agreement, either by exercising the default provision contained in paragraph 12 of the Agreement, or by terminating the Agreement based on defendant's breach. Accordingly, the agreement remained in effect until defendant terminated it by giving plaintiffs written notice and, thirty (30) days thereafter, terminating the Agreement as provided in the termination clause. Agreement at ¶ 12. Even viewing plaintiffs' written correspondence to defendant as plaintiffs' giving notice to defendant, and giving it an opportunity to cure the breach, plaintiffs never terminated the agreement, and did not bring the instant action until after defendant terminated the agreement. _V.S. International, S.A. v. Boyden World Corp.,_ 862 F.Supp. 1188 (S.D. NY. 1994).

In this case, Luve terminated after having sent two notices of default and after Triboro failed to cure. Luve's cashing of royalty checks are nothing more than Luve mitigating its damages which it has an absolute duty to attempt. It is clear that Luve's damages are greater than the small royalty payments, as Triboro has admitted that if it is found that it does not have a right to sell the licensed product it is potentially liable for a judgment in the millions of dollars. (Dkt# 68 at page 35).

**Material Fact Issues Exist that Defeat Triboro's Remaining Summary Judgment**

Triboro seeks summary judgment on a no-evidence basis as to Luve's Misappropriation, Conversion and Unjust Enrichment claims because Triboro alleges there is no evidence that the ideas or products were "novel". The declaration of Amy Seckinger (Exhibit 2); Deposition of Richard Williams (Exhibit 6), Deposition of Darrell Farrell (Exhibit 4) and Emails produced by Triboro (Exhibit 3) all establish facts that create a material fact issue that the ideas and products were in fact novel.

Triboro next tries to argue that there is no evidence that in the confines of the Exclusive License Agreement between Triboro and Luve, LLC involved a confidential relationship and therefore it could not have misappropriated the Better Bath Line. This is incredible when Luve is owned and operated by a house mom, who Triboro argues in its brief, was unable to place or sell a single product. (Dkt#68). Triboro does however acknowledge that a confidential relationship is "synonymous with fiduciary relationship and […][exists] generally where the parties do not deal on equal terms and one trusts and relies on the others."(citation omitted)(Dkt#68 at page 38). In the context of the ELA where Triboro claims that it has sole discretion on everything from branding, packaging,

pricing, marketing, and manufacturing on a worldwide basis one can hardly imagine a more unequal field. The arguments put forward by Triboro in opposition of Summary Judgment are quite telling of how Triboro perceived the relative bargaining power of the parties. Triboro can breach just about every term related to reporting, marking, sampling and branding and those are merely technical breaches because it has sole discretion and Luve has no say on anything. Clearly, Triboro's position is one of outright inequality. The evidence also establishes that Triboro worked with Luve on the better bath line, completed the line and at the last minute chose to use its own brand because it did not have an ownership interest in Luve's brand. (See Exhibit 3 - Emails)(See also declaration of Amy Seckinger, Exhibit 2).

Triboro next argues that there is no evidence that it exercised dominion and control over Luve's Better Bath Line. Such an argument is on its face frivolous in light of the email communications internally wherein Triboro's own employees and officers are stating they are not going to build Luve's brand and that they will move the better bath line into their own brand so they can keep it if Luve cancels its ELA. (Exhibit 3, emails)

## VII. REQUEST FOR ORAL ARGUMENT

Luve requests oral argument, as Luve believes oral argument will assist the court in addressing the issues and the evidence in this matter.

## VIII. CONCLUSION

As set out above, Luve is entitled to Summary Judgment on Triboro's claims because, Triboro has no damages and it failed to perform. Luve is entitled to  partial summary judgment that Triboro breached the ELA.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, DEFENDANT/COUNTER-CLAIMANT prays the Court grant summary judgment in favor of Defendant/Counter-Claimant, and to any such other further relief to which Defendant/Counter-Claimant is entitled to in equity or law.

Dated September 3, 2013.

Respectfully submitted,

THE SCHILLER LAW GROUP, PLLC

By   /s/ David A. Schiller
     David A. Schiller, TBN 00794601
     2309 W. Parker Road
     Plano, TX 75023
     Tel: (469) 467-9200
     Fax: (469) 467-9600

     ATTORNEY FOR DEFENDANT
     COUNTER-CLAIMANT

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this the 3rd day of September, a true and correct copy of the foregoing instrument has been sent to all counsel of record via facsimile, according to Federal Rules of Civil Procedure.


/s/ David A. Schiller_____
David A. Schiller