**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

TRIBORO QUILT MANUFACTURING
CORPORATION,

               *Plaintiff/Counterclaim Defendant*,

    -v-

LUVE LLC,

               *Defendant/Counterclaim Plaintiff*.

C.A. No.: 10-cv-03604 (VB) (GAY)

## JOINT PRETRIAL ORDER

Pursuant to Rule 3(A) of this Court's Individual Practices, and Rule 26(a)(3) of the Federal Rules of Civil Procedure ("FRCP"), Plaintiff Triboro Quilt Manufacturing Corporation ("Triboro" or "Plaintiff") and Defendant Luve LLC ("Luve" or "Defendant") hereby submit the instant Joint Pretrial Order.

## IDENTIFICATION OF TRIAL COUNSEL

The individual names, firm names, addresses, telephone and facsimile numbers, and email addresses of the parties' trial counsel are as follows:

Trial Counsel for Triboro

Paul Fields
Cameron S. Reuber
Jonathan W. Thomas
LEASON ELLIS LLP
One Barker Avenue, Fifth Floor
White Plains, New York 10601
Telephone: (914) 288-0022
Facsimile: (914) 288-0023
Email: Fields@LeasonEllis.com
Email: Reuber@LeasonEllis.com
Email: Thomas@LeasonEllis.com

Trial Counsel for Luve

David A. Schiller
The Schiller Law Group, PLLC
3315 Silverstone, Suite B
Plano, Texas 75023
Telephone: (469) 467-9200
Facsimile: (469) 467-9600
Email: davids@schillerlaw.com

1

## SUBJECT MATTER JURISDICTION

As stated in its March 18, 2014 decision on the parties' respective summary judgment motions and Triboro's motion to strike, this Court has subject matter jurisdiction over Triboro's stated claims and Luve's counterclaims under 28 U.S.C. § 1332(a).  *See Dkt*. 86.  Specifically, complete diversity of citizenship exists between Triboro, a New York corporation, and Luve, a Wisconsin limited liability company, and the amount in controversy on each party's stated claims exceeds $75,000.00, exclusive of interests and costs.  *See Dkts*. 1 and 8.  Luve contends that Triboro based upon its relief sought herein cannot establish that at the time it filed suit that it had in fact suffered any damages much less damages in excess of $75,000.00.  Therefore as to Triboro's claims the amount in controversy element has not been met.

## CLAIMS TO BE TRIED

A summary of the parties' claims and defenses that remain to be tried is set forth *infra*.

### A.     Triboro's Statement of Claims

Triboro's claims in this action for breach of contract, wrongful termination, and specific performance are based on Luve's attempt to terminate the parties' Exclusive License Agreement (the "ELA") in 2009 and 2010 based on Triboro's alleged breaches of ELA ¶¶ 7.1, 7.2, 3.2.4, and 12.2.4.  However, Triboro plans to establish at trial that Luve did not have a valid basis to terminate the ELA because (i) Triboro's alleged breaches were not material and (ii) Luve accepted Triboro's performance under the ELA after purportedly terminating same.  As such, Triboro plans to establish that it is entitled to (i) specific performance of the ELA by Luve and (ii) an award of damages caused by Luve's wrongful termination.

2

### 1.  Luve's Purported Termination of the ELA Was Wrongful

*First,* Triboro plans to establish at trial that Luve did not have grounds to terminate the ELA under ¶ 12.2.3 of same.  Specifically, the ELA could only be terminated under ¶ 12.2.3 if one party thereto "breach[ed] [the] Agreement in a *material* respect […]." (emphasis added).  A right or obligation under a contract is "material" if it goes to the essence of the contract.  As discussed in Triboro's "Statement of Defenses" section *infra*, *none* of its alleged breaches of the ELA were material because they did not go to the essence of same.  Rather, as Triboro will establish at trial, the essence of the ELA was for Triboro to manufacture, market, and sell Luve's bath blanket product.  Triboro unquestionably did just that.  As such, Luve's attempt to terminate the ELA under ¶ 12.2.3 was wrongful.

### 2.  Luve Accepted Triboro's Performance Under the ELA After Purportedly Terminating Same

*Second,* Triboro plans to establish at trial that, even if its alleged breaches of the ELA were found to be material, Luve could not terminate the ELA based on said breaches since it accepted Triboro's performance under the ELA after purportedly terminating same.

Specifically, Triboro will establish at trial that, under New York's election of remedies doctrine, when a party materially breaches a contract, the non-breaching party *must* choose between two remedies, namely, (i) they can elect to terminate the contract and recover liquidated damages *or* (ii) they can continue the contract and recover damages solely for the breach.  They *cannot* do both.  Once the non-breaching party elects to continue the contract, they cannot thereafter elect to terminate the contract based on the alleged material breach; rather, they can only elect to terminate based on a subsequent alleged material breach.

{05805/606499-000/01156488.1}

Moreover, the non-breaching party can signify their intent to continue the contract by accepting the performance of the breaching party. As Triboro will establish at trial, Luve accepted Triboro's performance under the ELA after purportedly terminating same by: (i) accepting *and* cashing royalty payments from Triboro under the ELA; (ii) not interfering with Triboro's continued manufacturing of the bath blanket under the ELA; and (iii) failing to identify any subsequent breaches of the ELA that were not set forth in the 2009 and 2010 termination notices.  As such, Luve did not have any basis to terminate the ELA under ¶ 12.2.3 of same.

### B.      Triboro's Statement of Defenses

Triboro will present the following defenses to Luve's claims for (i) breach of contract; (ii) misappropriation; (iii) conversion; and (iv) unjust enrichment.

### 1.   Breach of Contract

The bases for Luve's breach of contract claim are Triboro's alleged breaches of ¶¶ 6.1, 7.1, 7.2, and 3.2.4 of the parties' Exclusive License Agreement (the "ELA").  Consistent with its position throughout this action, Triboro plans to establish at trial that, to the extent there is a finding of any breach of the ELA, none of the alleged breaches were material (which Luve must establish in order to prevail on its claim), either individually or in the aggregate, because they did not involve rights or obligations that went to the essence of the ELA.  Rather, the sole purpose of the ELA was for Triboro to manufacture, market, and sell Luve's bath blanket. Triboro did just that, but Luve nonetheless claims Triboro materially breached the ELA so as to damage Luve.

Furthermore, Triboro will establish at trial that others manufacture, market, and sell Luve's bath blanket because the patent application that Luve filed on its construction was rejected by the U.S. Patent and Trademark Office (the "PTO") for failing to meet the novelty requirements of the U.S. Patent Laws.

4

###### i.   ELA § 6.1

Luve claims that Triboro breached ELA ¶ 6.1 by "[f]ailing to comply with the parties' joint goal of maximizing the Licensed Mark."  Luve claims that the "Licensed Mark" under the ELA was the "Bath Luve trademark name that Triboro was responsible for obtaining."  Triboro plans to establish at trial that Luve cannot prevail on its claimed breach of ELA ¶ 6.1 because such claim is based on at least three (3) untenable interpretations of same.

*First*, Triboro's obligation under ELA ¶ 6.1, relating to the "Prosecution of [the] Licensed Mark," was to use its "sole discretion" when prosecuting Luve's U.S. Trademark Application No. 76/959,973 for the LUVE mark before the PTO.  As Triboro plans to establish at trial, the obligation to use its *sole discretion* when deciding how to best prosecute the aforementioned trademark application did *not* create an additional, independent obligation for Triboro to build or maximize the value of the "Licensed Mark," which only Luve would own and control.

*Second*, there was only one "Licensed Mark" under the ELA--the LUVE mark, *not* the BATH LUVE mark.  Specifically, "Licensed Mark" is defined in ELA ¶ 1.4 as "the LUVE mark as filed on August 16, 2006 by Luve and granted Serial Number 76/959,973" (the "LUVE Mark").  There is no reference, express or implied, to the BATH LUVE mark in Luve's application for the LUVE Mark or the ELA.  Thus, even if Triboro did have an obligation under ELA ¶ 6.1 to maximize the value of the "Licensed Mark" (which it did not), it would have been to maximize the LUVE Mark, *not* the BATH LUVE mark.

Moreover, Triboro will establish at trial that the specimen of use submitted in connection with Luve's application for the LUVE Mark displayed the BATH LUVE mark, *not* the LUVE mark.  However, the PTO rejected the aforementioned specimen because it considered the LUVE and BATH LUVE marks to be two separate and distinct marks.  Thereafter, Luve filed a separate

5

trademark application for the BATH LUVE mark and supplied Triboro with written authorization to abandon the application for the LUVE mark.  However, as discussed *supra*, the BATH LUVE mark was *not* covered by any portion of the ELA.

*Third*, Luve's interpretation of ELA ¶ 6.1 would render other provisions of the ELA irrelevant and meaningless.  For example, under ELA ¶ 6.2, entitled "Triboro's Marks," Luve granted Triboro the right to use "its sole discretion [to] select the brand names, slogans, trade dress or other indicia of origin to be used in connection with the sale of Licensed Products thereon."  However, under Luve's adopted interpretation of ELA ¶ 6.1, Triboro did not have "sole discretion" to decide which trademarks, etc. to use in connection with the Licensed Product under the ELA.  As discussed *supra*, such interpretation is contrary to the plain language of ELA ¶ 6.2.

Thus, as Triboro plans to establish at trial, Luve's interpretation of ELA ¶ 6.1 is squarely at odds with one of contract law's central tenets—to give meaning to all aspects of an agreement—and cannot support Luve's claimed breaches of the ELA as a matter of law.  Moreover, Triboro also plans to establish at trial that, even if its alleged breach of ELA ¶ 6 was found to be material, Luve still cannot prevail because it cannot prove it suffered any damages from Triboro's alleged breach.

### ii.   ELA § 7.1

Luve claims that Triboro breached ELA ¶ 7.1 by failing to send all of the samples, products, and packaging used to market the bath blanket to Luve for its comment and review.  To prevail on this claim, Luve must prove that Triboro's alleged breach of ELA ¶ 7.1 was material.  Triboro will concede that it did not send all of the samples, products, and packaging used to market the bath blanket to Luve for its comment and review.  However, Triboro plans to

6

establish at trial that any alleged breach of ELA ¶ 7.1 could not have been material because Luve's purported rights thereunder were immaterial (*i.e.*, they did not go to the essence of the ELA).

Specifically, the plain language of ELA ¶ 7.1 makes clear that Triboro, *not* Luve, retained *sole discretion* regarding final determinations for product, packaging, and promotional materials used for the bath blanket.  In other words, Luve granted Triboro the right under ELA ¶ 7.1 to disregard altogether Luve's "review or discussion" regarding product, packaging, and promotional materials for the bath blanket.  Moreover, past experience had shown that many of Luve's comments were irrelevant (*e.g.*, suggesting flammable material for use in the products, *etc.*).  Thus, Triboro plans to establish at trial that ELA ¶ 7.1 itself makes clear Luve's alleged rights thereunder were immaterial.

Triboro also plans to establish at trial that, even if its alleged breach of ELA ¶ 7.1 was found to be material, Luve still cannot prevail because it cannot prove it suffered any damages (a necessary element of its breach of contract claim) from Triboro's alleged breach.  Specifically, Triboro plans to establish that the value of Luve's right to receive samples, products, and packaging was the wholesale value of each sample.  Triboro will introduce testimony from Luve's principal that said wholesale value is "roughly" $2.65.  Triboro will introduce evidence that, since attempting to terminate the ELA, Luve has accepted and cashed royalty payments from Triboro under the ELA that more than offset any alleged loss from not receiving $2.65 samples.  As such, Luve cannot establish that it has suffered any damages from Triboro's alleged breach of ELA ¶ 7.1.

### iii.    ELA § 3.2.4

Luve claims that Triboro breached ELA ¶ 3.2.4 by failing to send Luve sales and

marketing reports for the bath blanket.  To prevail on this claim, Luve must prove at trial that Triboro's alleged breach of ELA ¶ 3.2.4 was material.  Triboro will concede that it stopped sending Luve sales and marketing reports after Luve objected to the format of the reports sent by Triboro.  However, Triboro plans to establish at trial that any alleged breach of ELA ¶ 3.2.4 could not have been material because Luve's purported rights thereunder were immaterial.

Specifically, ELA ¶ 3.2.4 is silent as to what constitutes a compliant report format.  Thus, in the absence of a request from Luve regarding the format of the reports, Triboro sent the reports in a format that it believed to be commercially reasonable.  However, Luve objected to the format. Triboro then inquired as to Luve's preferred format, but Luve *never* responded to Triboro's inquiry.  Accordingly, Triboro plans to establish that Luve's failure to inform Triboro as to its preferred format for the reports—in both the ELA and in response to Triboro's inquiry— is proof itself that Luve did not consider its alleged rights under ELA ¶ 3.2.4 to be material.

Triboro also plans to establish at trial that, even if its alleged breach of ELA ¶ 3.2.4 was found to be material, Luve still cannot prevail because it cannot prove it suffered any damages from Triboro's alleged breach.  Specifically, Triboro plans to establish that Luve has produced no evidence in this action regarding its alleged damages from Triboro's alleged breach of ELA ¶ 3.2.4.   Triboro will introduce evidence that, since attempting to terminate the ELA, Luve has accepted and cashed royalty payments from Triboro under the ELA.  As such, Luve cannot establish that it has suffered any damages from Triboro's alleged breach of ELA ¶ 3.2.4.

### iv.    ELA § 7.2

Luve claims that Triboro breached ELA ¶ 7.2 by failing to mark the bath blanket and the packaging therefor as "Licensed by Luve LLC" and "Patent Pending to Luve LLC."  However, Triboro plans to establish at trial that (i) Luve's interpretation of Triboro's obligations under

ELA ¶ 7.2 is contradicted by the plain language of ELA ¶ 7.2 itself and (ii) any alleged breach of ELA ¶ 7.2 could not have been material because Luve's purported rights thereunder were immaterial.  Paragraph 7.2 of the ELA states, *in toto*:

> 7.2 Marking. Triboro shall suitably mark or cause to be marked all containers and packages of any Licensed Product and shall fix or cause to be fixed on some conspicuous part of every such Licensed Product where appropriate, a stamped plate or other method of marking containing the relevant U.S. Patent Number or Patent Pending, whichever is appropriate. Triboro shall suitably mark or cause to be marked and use the Licensed Mark, as appropriate. Further, Triboro shall mark the Licensed Product with an indication that the patent is licensed from Luve.

*First*, the plain language of ELA ¶ 7.2 makes clear that Triboro was *not* obligated to mark the bath blanket or the packaging thereof as "Patent Pending to Luve LLC," only "Patent Pending."  Nonetheless, Triboro will concede that it mistakenly failed to mark only two out of approximately one dozen bath blanket products as "Patent Pending."  However, Triboro plans to establish at trial that such failure was immaterial because the marking obligation did *not* go to the essence of the ELA; rather, the sole purpose of the ELA was for Triboro to manufacture, market, and sell the bath blanket, which it unquestionably did.

*Second*, the plain language of ELA ¶ 7.2 makes clear Triboro did not have an obligation to mark any bath blanket or packaging therefor as "Licensed by Luve LLC."  Specifically, as is customary in patent licensing agreements, the issuance of Luve's patent for the bath blanket was a precondition to Triboro's obligation to use the marking "licensed from Luve."  Since the patent never issued, Triboro's aforementioned obligation never arose.

*Third*, Triboro complied with its obligation under ELA ¶ 7.2 to "suitably mark or cause to be marked and use the Licensed Mark, as appropriate."  As discussed *supra*, under ELA ¶ 6.2, Luve granted Triboro sole and unfettered discretion to use any trademark or "other indicia of origin" on the bath blankets.  Triboro will establish that it marked all Luve-branded bath blankets

9

with the "Licensed Mark," *i.e.*, the LUVE mark.  However, Triboro will establish that, as the plain language of ELA ¶ 6.2 makes clear, it had no obligation to mark all bath blankets with the LUVE mark.

Triboro also plans to establish at trial that, even if its alleged breaches of ELA ¶ 7.2 were found to be material, Luve still cannot prevail because it cannot prove it suffered any damages from Triboro's alleged breach.  Specifically, Triboro plans to establish that Luve has produced no evidence in this action regarding its alleged damages from Triboro's alleged breaches of ELA ¶ 7.2.   Triboro will introduce evidence that, since attempting to terminate the ELA, Luve has accepted and cashed royalty payments from Triboro under the ELA.  As such, Luve cannot establish that it has suffered any damages from Triboro's alleged breach of ELA ¶ 7.2.

### 2.  Misappropriation[1]

The basis of Luve's misappropriation claim is that Triboro allegedly stole Luve's "idea" for wash cloths, etc. that matched the bath blanket (the "Better Bath Line") and manufactured,

---

[1] Luve, in the course of drafting the instant joint pretrial order, advised Triboro that it seeks to present a claim at trial for unfair competition under New York common law.  Luve's basis for this contention is the Court's interpretation of Luve's misappropriation claim as a subset of New York's unfair competition law. *See Dkt.* 86, Summary Judgment Decision, at 14.  Luve concedes, however, that its Counterclaim does not plead "unfair competition" insofar as it does not plead the words "unfair" and "competition" at any point in Luve's pleadings. *See Dkt.* 9, Luve Answer and Counterclaims, *generally.*

In an effort to identify and resolve all matters to be tried, the parties hereby stipulate and agree that Luve will be presenting a claim for unfair competition under New York law for solely for misappropriation of an idea.  To do so, the parties stipulate and agree that Luve must satisfy two elements.  "First, plaintiff must establish that the idea disclosed is novel. Second, plaintiff must establish that a legal relationship existed between the parties." *Zikakis v. Staubach Retail Servs., Inc.*, 04 CIV. 9609 (NRB), 2005 WL 2347852 (S.D.N.Y. Sept. 26, 2005) (citing *McGhan v. Ebersol*, 608 F.Supp. 277, 284 (S.D.N.Y.1985); and *Oasis Music, Inc. v. 900 U.S.A., Inc.,* 161 Misc.2d 627, 631, 614 N.Y.S.2d 878, 881 (Sup.Ct.N.Y.Co.1994)).  The parties further agree that Luve will not pursue a claim at trial for "unfair competition" under New York common law that exceeds the *Zikakis* framework insofar as it is limited to misappropriation of Luve's ideas (*i.e.,* Luve will not pursue a broader claim for "unfair competition" under New York common law for anything beyond Triboro's alleged misappropriation of Luve's ideas for the Better Bath Line). *See ibid.* at ¶¶ 32-39.

marketed, and sold a product line that was nearly identical to same.  However, Triboro plans to establish at trial that Luve cannot prove its misappropriation claim for two (2) reasons.

*First*, Luve does not have a protectable or enforceable property interest in its "idea" for the Better Bath Line because its "idea" was not novel.  Rather, Luve's "idea" was the result of viewing similar goods being offered for sale by competitors and merely combining these preexisting constructions from the public domain.  Furthermore, Luve cannot prove that it has any patent, trademark, trade dress, copyright, or trade secrets rights in or to its "idea."  Indeed, as a threshold matter, Luve has *no* claims in this action for patent, trademark, trade dress or copyright infringement, or trade secret misappropriation upon which to base its alleged property rights to its putative "idea."

*Second*, Luve cannot prove its "idea" amounted to confidential information, a necessary element of its claim.  Specifically, Triboro will establish that, under ELA ¶ 1.2, in order to maintain the purported confidentiality of any information disclosed under the ELA, the parties had to mark such information as "Confidential," "Proprietary," or "a similar legend."  The purpose of this marking requirement was to put the receiving party on notice of the disclosing party's confidentiality claim.  The receiving party then had the option to either (i) accept the confidentiality claim or (ii) reject same for one or more of the reasons stated in ELA ¶ 13.3 (*e.g.*, the information claimed as "confidential [is] a matter of public knowledge though no fault of or action by the Receiving Party […]").  However, insofar as every product marketed by Triboro is concerned, the evidence will show that Luve did *not* mark *any* information that it disclosed to Triboro as confidential under the ELA.  Thus, Luve's own conduct prevented Triboro from considering such information as "confidential" or putting Triboro on notice that it needed to address Luve's putative rights to same or otherwise respond to Luve.

11

In sum, Triboro plans to establish at trial that (i) Luve copied ideas from the public domain (*i.e.,* the products of competitors) in the course of submitting those unoriginal ideas to Triboro for inclusion in Luve's product line and (ii) Luve's claim for misappropriation is based on an unprotectable "idea" that could not be misappropriated as a matter of law.

### 3.   Conversion

Like its misappropriation claim, the basis of Luve's conversion claim is Triboro's alleged theft of Luve's "idea" for the Better Bath Line.  However, Triboro plans to establish at trial that Luve cannot prove its conversion claim for two (2) reasons.  First, as discussed *supra*, Triboro plans to establish that Luve does not have a protectable or enforceable property interest in its "idea."  Second, Triboro plans to establish that Luve cannot prove its intangible "idea" was ever reduced to physical form, merged into, or identified in, a document, or related to money. As such, Luve cannot prove that Triboro ever exercised dominion or control over any tangible property belonging to Luve that was capable of being converted as a matter of law.

### 4.   Unjust Enrichment

The basis of Luve's claim for unjust enrichment is that Triboro wrongfully benefitted from its alleged theft of Luve's "idea" for the Better Bath Line and, thus, gained access to a turn-key business.  However, Triboro plans to establish at trial that Luve cannot prove its claim for unjust enrichment because, as discussed *supra*, Luve does not own a protectable or enforceable property interest in its "idea."  As such, Triboro could not have unjustly enriched itself at the expense of Luve because Luve's "idea" had no value that could have been conferred upon Triboro (*i.e.,* Luve's "idea" was simply the imitation of products already on the market).

12

### 5.  Luve's Alleged Damages

As set forth *supra*, Triboro plans to establish at trial that all of Luve's claims must fail because it cannot prove it suffered any damages from Triboro's conduct complained of in this action.  Furthermore, to the extent that Luve claims it is entitled to damages after its alleged termination of the ELA, Triboro plans to establish at trial that Luve is *not* entitled to any such damages, or, in the alternative, is only entitled to a five per cent (5) royalty of net sales.

### i.  Luve Has Not Suffered Any Damages from Triboro's Alleged Conduct

As discussed *supra*, Triboro plans to establish at trial that Luve has not suffered any damages from Triboro's alleged breaches of the ELA.  Specifically, since attempting to terminate the ELA, Luve has: (i) accepted and cashed royalty payments from Triboro under the ELA; (ii) not interfered with Triboro's continued manufacturing of the bath blanket under the ELA; and (iii) failed to identify any subsequent breaches of the ELA that were not set forth in the 2010 termination notice.  Accordingly, there is no basis, in law or fact, to award Luve any damages for Triboro's alleged breaches of the ELA.

Furthermore, Triboro plans to establish at trial that Luve cannot recover any damages from Triboro on its claims for misappropriation, conversion, or unjust enrichment because Luve does not have a protectable or enforceable property right that could form the basis for a damages award on such claims.

### ii.  Luve is Not Entitled to Any Damages After its Alleged Termination of the ELA

Triboro also plans to establish at trial that Luve is not entitled to any damages, whether in the form of a royalty on Triboro's net sales of the bath blanket or otherwise, after Luve's alleged termination of the ELA.  Specifically, Triboro plans to establish that there is no language in the

ELA that provides a post-termination royalty or other monetary award to Luve on Triboro's net sales of the bath blanket.  Triboro will also establish that the parties never amended the ELA, in writing or otherwise, to provide Luve with a post-termination royalty or other monetary award.

   **iii.**  **The Highest Possible Damage Award that Luve Could be Awarded After its Alleged Termination of the ELA is a 5% Royalty on Triboro's Net Sales of the Bath Blanket**

   In the event the jury finds that Luve is entitled to damages after its alleged termination of the ELA, Triboro plans to establish that the most Luve is entitled to is a five percent (5%) royalty on Triboro's net sales of the bath blanket.

   Triboro will establish at trial that ELA ¶ 3 governs royalty payments from Triboro to Luve.  Specifically, ELA ¶ 3.2 ("Royalties, Cost Sharing and Reports") provides, in pertinent part, that in "consideration of the licenses and other rights granted to it herein, Triboro shall pay Luve royalties for Triboro's, its Affiliates' and its sublicensees' sales of Licensed Products as follows: (a) five percent (5%) of Net Sales of Licensed Products."

   "Licensed Product" is defined in ELA ¶ 1.5 as "any product or part thereto that is made, used, sold, offered for sale or imported hereunder and that is covered in whole or in part by a valid, issued, unexpired claim or a valid pending claim contained in the Luve Application (defined below)."  "Luve Application" is defined in ELA ¶ 1.7 as "any patent applications set forth in Schedule A [to the ELA] as well as any patent(s) issuing therefrom divisionals, continuations, continuations-in-part, reissues, reexaminations, and foreign counterparts of such patents and patent application."  However, there is only one patent application set forth in Schedule A to the ELA, namely, "U.S. Provisional Patent Application No. 60/819,216, filed July 7, 2006."  As confirmed by readily-available public information, the aforementioned provisional patent application was for a "bath cover for child," *i.e.*, the bath blanket.

14

Thus, the plain language of the ELA makes clear that the highest royalty Luve was ever entitled to receive was five per cent (5%) on Triboro's (or Triboro's affiliates' or sublicensees') net sales of the bath blanket. Accordingly, there would be no basis, in law or fact, to award Luve post-alleged termination damages of anything more than a five per cent (5%) royalty on Triboro's sales of the bath blanket; to award anything more would be purely speculative.

### 6. Luve's Expert

Luve has identified Mr. Don Smith as a witness that it intends to rely upon at trial. Mr. Smith is the same putative expert that prepared the damages report used by Luve at summary judgment in this action and struck by this Court in its March 18 decision. Thus, to the extent that Luve seeks to rely upon Mr. Smith at trial for the same purposes it relied upon him at summary judgment, Triboro renews its three primary objections set forth in its motion to strike.

First, as established at summary judgment, Triboro will establish at trial that Mr. Smith is not qualified as an expert in contract law. As such, he is not qualified to testify under Rule 702 of the Federal Rules of Evidence ("FRE") as to the meaning or interpretation of the ELA's terms and/or the conclusions to be drawn therefrom. Second, as established at summary judgment, Triboro will establish at trial that, even if Mr. Smith was qualified as an expert in contract law, his opinion testimony as to whether or not Triboro's alleged breaches of the ELA were material is inadmissible because it usurps the roles of the judge and jury. Third, as established at summary judgment, Triboro will establish at trial that Mr. Smith's damages calculations are not based on sufficiently reliable data. Specifically, Mr. Smith's damages calculations are based upon sales information for a third-party, *not* Triboro. In fact, Triboro will establish at trial that during his deposition in this action, Mr. Smith confirmed that he did not have knowledge of Triboro's sales of the bath blanket when preparing his damages calculations purportedly based

on such sales, but instead expressly relied upon information supplied by Luve's trial counsel.

Thus, Mr. Smith is precluded under FRE 702 from testifying as to Luve's alleged damages.

    **C.**    <u>**Luve's Statement of Claims**</u>

        1.   Luve's claims to be tried "without recital to evidentiary matters" are as follows: Following the Court's ruling on the summary judgment motions, Luve has counter-claims of Breach of Contract, Violations of the New York Common Law Unfair Competition,[2] Misappropriation, Unjust Enrichment and Conversion.

    **D.**    <u>**Luve's Statement of Defenses**</u>

Luve's defenses to be tried "without recital to evidentiary matters" are as follows: a. Luve did not Breach the parties Contract;

        b.   Triboro has waived its claims against Luve;

        c.   The agreement by its terms, terminated on September 30, 2009;

        d.   Triboro breached first and therefor Luve's breach if any is excused;

        e.   Triboro's damages if any are subject to set-off, recoupment, offset, or other legal or equitable reductions of damages (including but not limited to equitable estoppel, the doctrine of unclean hands, and estoppel by contract);

        f.   Triboro has failed to mitigate its damages;

        g.   Triboro did not plead for Specific Performance and its request for that relief is not supported by any of its pleadings.

        h.   Triboro has not suffered any damages and/or the damages it is claiming are below the jurisdictional limits for the invocation of diversity jurisdiction.

---

[2] *See* footnote 1, *supra*.

{05805/606499-000/01156488.1}

## JURY STATEMENT

The parties agree that this action is to be tried by a jury.  The parties reasonably anticipate the trial lasting approximately 8-14 days.

## CONSENT TO MAGISTRATE

The parties do not consent to a trial by a United States Magistrate Judge.

## STIPULATED FACTS

The parties, by and through their trial counsel, hereby stipulate to the following facts:

**A.     The Exclusive License Agreement**

1.     On August 30, 2006, Triboro and Luve entered into the ELA.

2.     The ELA is the only contract alleged to be breached in this action.

3.     The bath blanket is a functional item that is draped over an infant's torso like a washcloth.

4.     After executing the ELA, Triboro manufactured, marketed, and secured orders for the bath blanket from established retailers of infant products with whom it  previously conducted business including, Wal-Mart, Target, Babies R Us, Baby Depot, Buy Baby, and Kohl's.

5.     Luve has not sold any bath blankets outside of those manufactured by Triboro under the ELA.

**B.     The Licensed Product**

6.     There is only one patent application set forth in Schedule A to the ELA, namely, "U.S. Provisional Patent Application No. 60/819,216, filed July 7, 2006."

7.     The aforementioned provisional patent application was for a "bath cover for child," *i.e.*, the bath blanket.

{05805/606499-000/01156488.1}

8.      The PTO has rejected the aforementioned patent application and that decision is not final as it is on appeal.

### C.      The Patent License

9.      On July 6, 2007, Luve's principal, Ms. Amy Seckinger, filed a patent application for the bath blanket with the PTO, namely, U.S. Patent Application No. 11/774,475 (the "'475 Application"), for a "bath cover for child."

10.     On July 22, 2010, the PTO issued a rejection of the '475 Application on the grounds that the bath blanket did not meet the novelty requirement of U.S Patent Laws.

11.     On January 19, 2011, Ms. Seckinger filed a Request for Continued Examination of the '475 Application with the PTO.

12.     On March 17, 2011, the PTO issued a rejection of the '475 Application on the grounds that the bath blanket was not novel as required by U.S. Patent Laws.

### D.      The Licensed Mark

13.     On August 16, 2006, Luve filed U.S. Trademark Application No. 76/959,973 with the PTO for the mark LUVE in Class 24 for "Hooded towels, towels, wash cloths, bath mitts, bedding, namely, children's blankets, receiving blankets, crib bumpers and crib sheets" and in Class 25 for "Robes, slippers, clothing, namely, one-piece underwear, creepers, hats, shirts and baby bibs not of paper."  The application for the LUVE mark was filed based on Luve's stated intent to use the mark in the future.

14.     On May 11, 2009, the PTO issued an Office Action rejecting the Statement of Use submitted in connection with Luve's application for the LUVE Mark because the accompanying specimen of use displayed the BATH LUVE mark, *not* the LUVE Mark.

{05805/606499-000/01156488.1}

15.     On November 25, 2009, the PTO again issued an Office Action rejecting the Statement of Use submitted in connection with Luve's application for the LUVE Mark because the accompanying specimen of use displayed the BATH LUVE mark, *not* the LUVE Mark.

16.     On July 1, 2010, the PTO issued a Notice of Abandonment with the respect to the application for the LUVE mark.

### E.     The BATH LUVE mark

17.     On September 4, 2009, Luve filed U.S. Trademark Application No. 77/820,650 for the mark BATH LUVE in Class 24 for "Hooded towels, towels, wash cloths, bath mitts, bedding, namely, children's blankets, receiving blankets, crib bumpers and crib sheets" and in Class 25 for "Robes, slippers, clothing, namely, one-piece underwear, creepers, hats, shirts and baby bibs not of paper."   Unlike the application for the LUVE Mark, the application for the BATH LUVE mark was filed based on purported present use in commerce.

18.     On July 20, 2010, Luve's application for the BATH LUVE mark issued as U.S. Trademark Registration No. 3,820,719.

### F.     Triboro's Additional Obligations Under the ELA

19.     Under ELA ¶ 7.1, entitled "Marketing and Sales":

Triboro, at its sole discretion, shall manufacture, market, distribute and sell the Licensed Product, including selecting any trademarks or copyrightable material to use in connection with such products, the design, merchandising, and packaging of such products and ensuring quality control for each such product.  Luve shall be sent samples of the product, packaging and promotional material for review and discussion with Triboro.  The final determination of product, packaging and promotion material rests solely with Triboro.

20.     Under ELA ¶ 3.2.4, entitled "Reporting":

Within 30 days of the end of each quarter, Triboro shall provide a report setting forth the royalty due for the particular royalty period, the amount actually paid to Luve and the amount for payment of Shared Expenses.  The quarters end March 30th, June 30th, September 30, and December 31st of the respective calendar year.

A separate report will be prepared at the same time setting forth Luve's unpaid portion of the Shared Expense account.  That report will also reflect all related activity for the period including the opening balance in the account, royalty payments withheld during the period, amounts withdrawn for payment of Shared Expenses and the balance remaining due from Luve for Shared Expenses at the end of the period as well as an updated sales and marketing report, including order backlogs.

21.     The ELA does not specifically define the format of the required sales and marketing reports.

22.     Under ELA ¶ 7.2, entitled "Marking":

Triboro shall suitably mark or cause to be marked all containers and packages of any Licensed Product and shall fix or cause to be fixed on some conspicuous part of every such Licensed Product where appropriate, a stamped plate or other method of marking containing the relevant U.S. Patent Number of Patent Pending, whichever is appropriate.  Triboro shall suitably mark or cause to be marked and use the Licensed Mark, as appropriate.  Further, Triboro shall mark the Licensed Product with an indication that the patent is licensed from Luve.

**G.     Luve's Alleged Termination of the ELA**

23.     Under ELA ¶ 12.2.3, entitled "Termination for Breach":

In the event a party breaches this Agreement in a material respect, it shall have thirty (30) days after receiving written notice of said breach from the other party in which to cure said breach.  If the party receiving such notice fails to cure in such 30-day period, the other party may immediately terminate this Agreement upon written notice.  In the event that Triboro breaches this Agreement, the minimum annual royalty payment for the term, as defined in paragraph 12.1, shall be payable by Triboro.

24.     Under ELA ¶ 12.2.4, entitled "Termination by Luve," Luve could terminate the ELA "[a]nytime after the second year for failure by Triboro to use commercially reasonable efforts to maximize sale of Licensed Products."

25.     All of Luve's claims in this action arise under the common law of the State of New York.

26.     The ELA is to be interpreted under New York law.

20

## WITNESS LISTS

**A.      Triboro's Witness List**

**1.  Triboro  Representatives**.    Triboro  expects  to  call  the  following  Triboro representatives as witnesses in its case-in-chief, all of whom will testify as to the ELA and/or Triboro's business development, manufacturing, marketing, distribution, and/or sale of Luve-branded bath blanket covered by the ELA:

(i)       <u>Richard White</u>.  Mr. White is Triboro's Vice-President of Marketing.

(ii)      <u>Joel Kaplan</u>.  Mr. Kaplan is Triboro's President and Owner.

(iii)     <u>Daryl Farrell</u>.  Ms. Farrell is Triboro's Senior Vice-President of Merchandising.

(iv)     <u>Dennis Amendola</u>.  Mr. Amendola is Triboro's Global Supply Chain Director.

(v)      <u>Donna Slabberkorn</u>. Ms. Slabberkorn is Triboro's Senior Merchandiser.

(vi)     <u>Cathy Sun</u>.  Ms. Sun is Triboro's Product Specialist.

(vii)    <u>Richard Williams</u>.  Mr. Williams is Triboro's National Accounts Manager.

(viii)   <u>Marilyn Gemma</u>.  Ms. Gemma is Triboro's Senior Packaging Manager.

(ix)     <u>Bea Robustelli</u>. Ms. Robustelli is Triboro's account manager in its accounting department.

(x)      <u>Mark Zuckerman</u>. Mr. Zuckerman is Triboro's Vice President of Finance and Operations.

**2.  Other Witnesses**.  Triboro expects to call the following additional witnesses in its case-in-chief:

(i)       <u>Gabriele Goldaper</u>.    Ms.  Goldaper  is  Triboro's  duly-retained  and  disclosed damages and marketing expert in this action.  Triboro expects to elicit Ms. Goldaper's opinion testimony (i) that Luve did not suffer any damages from Triboro's alleged breaches of the ELA and (ii) regarding accepted marketing methods. Luve objects to Ms. Goldaper as she is not

21

qualified as an expert to offer opinions in this case and/or her opinions are unreliable as her methodology and the underlying data she supports her opinions on are not reliable.

(ii)   <u>Amy Seckinger</u>.  Ms. Seckinger is the owner of Luve.  Triboro expects to elicit testimony from Ms. Seckinger on at least the following topics: (a) Ms. Seckinger's contribution, physical, financial, or otherwise, to the bath blanket; (b) Luve's efforts to market and sell the bath blanket prior to entering into the ELA; (c) the ELA, including, but not limited to, the negotiations surrounding same; (d) Luve's pending patent application for the bath blanket; (e) Luve's trademark application for the LUVE mark; (f) Triboro's sales of the bath blanket; (g) Triboro's payment of royalties to Luve under the ELA; (h) Luve's alleged termination of the ELA; and (i) the parties' conduct after Luve's alleged termination of the ELA including, but not limited to, Luve's acceptance of royalty payments from Triboro under the ELA and Luve's efforts to stop Triboro's continued manufacturing of bath blankets covered by the ELA.

(iii)   <u>Don Smith</u>.  Mr. Smith is Luve's purported damages expert.  Triboro intends to elicit testimony from Mr. Smith regarding at least the following topics: (a) his background and qualifications regarding the subject matter of this action; (b) his background in contract law; (c) the circumstances surrounding his retention by Luve in this action; and (d) the preparation of his expert report that this Court struck on March 18, 2014 including, but not limited to, all documents and other information relied upon while preparing same.

(iv)   <u>David Schiller</u>. Mr. Schiller is Triboro's counsel of record in this action and has retained himself as an expert to opine on the purported reasonableness of his attorneys' fees in this action.  Triboro expects to elicit testimony from Mr. Schiller on at least the following topics: (a) his retention by Luve in this matter; (b) his fee arrangement with Luve in this matter; (c) his fee arrangements with other clients in similar matters; (d) the amount of hours he and/or his law

22

firm(s) have billed Luve for work performed in this action; and (e) all instances in which he has been the subject of an attorney disciplinary hearing or proceeding in any jurisdiction.

(v)    <u>Stephen Jones</u>.  Mr. Jones is Triboro's duly-retained and disclosed attorneys' fees expert in this action.  Triboro intends to rely on Mr. Jones' testimony in rebuttal to Mr. Schiller's testimony regarding the purported reasonableness of Mr. Schiller's attorneys' fees in this action.

(vi)    <u>Corporate representative of Defendant Luve</u>.

Triboro reserves the right to call rebuttal witnesses.  Triboro further reserves the right to call any witnesses identified by Luve directly or in discovery.

**B.    <u>Luve's Witness List</u>**

**1.  Triboro   Representatives**.    Luve expects to call the following Triboro representatives as witnesses in its case-in-chief:

(i)    <u>Richard White</u>.  Mr. White is Triboro's Vice-President of Marketing.

(ii)    <u>Joel Kaplan</u>.  Mr. Kaplan is Triboro's President and Owner.

(iii)    <u>Daryl Farrell</u>.  Ms. Farrell is Triboro's Senior Vice-President of Merchandising.

(iv)    <u>Dennis Amendola</u>.  Mr. Amendola is Triboro's Global Supply Chain Director.

(v)    <u>Donna Slabberkorn</u>. Ms. Slabberkorn is Triboro's Senior Merchandiser.

(vi)    <u>Cathy Sun</u>.  Ms. Sun is Triboro's Product Specialist.

(vii)    <u>Richard Williams</u>.  Mr. Williams is Triboro's National Accounts Manager.

(viii)    <u>Marilyn Gemma</u>.  Ms. Gemma is Triboro's Senior Packaging Manager.

(ix)    <u>Bea Robustelli</u>. Ms. Robustelli is Triboro's account manager in its accounting department.

(x)    <u>Mark Zuckerman</u>. Mr. Zuckerman is Triboro's Vice President of Finance and Operations.

2.      **Other Witnesses**.  Luve expects to call the following additional witnesses in its case-in-chief:

(i)      <u>Amy Seckinger</u>, individually and as a representative of Defendant Luve.

(ii)      <u>Edwin Seckinger</u>.  Pursuant to FRCP 37(c), Triboro objects to Luve calling Mr. Seckinger as a witness at trial or relying upon him for any other purpose in this action.  Triboro has no record of Luve identifying Mr. Seckinger as a witness in this action, in Luve's initial disclosures under FRCP 26 or otherwise.  In fact, the first time that Triboro learned of Luve's intention to rely upon Mr. Seckinger was during the parties' preparation of the instant joint pre-trial order.  Thus, under FRCP 37(c), Luve may not rely upon Mr. Seckinger in this action.

(iii)      <u>Don Smith</u>.  Pursuant to FRE 702, Triboro objects to Luve relying upon Mr. Smith in this action.  First, as the Court held in its March 18, 2014 decision, Mr. Smith is not qualified as an expert in contract law.  Second, even if Mr. Smith was qualified as an expert in contract law, he cannot offer opinion testimony as to whether Triboro's alleged breaches of the ELA were "material" because such testimony would usurp the customary roles of the judge and jury in this action.  Third, Mr. Smith's damages calculations are based upon data that is not sufficiently reliable, to wit, Luve's counsel of record, Mr. David Schiller, and the sales information of a third-party, not Triboro.

(iv)      <u>Gabriele Goldaper</u>.  Luve intends to rely upon Mr. Goldaper for rebuttal only and without waiving right to move to strike pursuant to *Daubert* motion

(v)      <u>Lori Grundle</u>. Works for Kohl's and is familiar with the facts surrounding Luve's products and Triboro's actions related to the same regarding the Kohl's account.

(vi)      <u>Lucia Gold</u>. Is a former employee of Triboro who has factual knowledge of the parties' dealings.

(vii)   <u>David Schiller</u>.  Mr. Schiller is Triboro's counsel of record in this action and has retained himself as an expert to opine on the purported reasonableness of his attorneys' fees in this action.  As such, Triboro objects to Mr. Schiller's testimony on the grounds of the witness-advocate rule.  Triboro further objects to Mr. Schiller's testimony, pursuant to FRE 403, on the grounds that Mr. Schiller's dual roles in this action will mislead the jury regarding, *inter alia*, Mr. Schiller's credibility.

(viii)   <u>Kathy Barzac</u>. Assisted Luve in taking Luve's design ideas and putting them on paper. Pursuant to FRCP 37(c), Triboro objects to Luve calling Ms. Barzac as a witness at trial or relying upon him for any other purpose in this action.  Triboro has no record of Luve identifying Ms. Barzac as a witness in this action, in Luve's initial disclosures under FRCP 26 or otherwise.

(ix)   <u>Tom Otterly</u>.  Pursuant to FRCP 37(c), Triboro objects to Luve calling Mr. Otterly as a witness at trial or relying upon him for any other purpose in this action.  Triboro has no record of Luve identifying Mr. Otterly as a witness in this action, in Luve's initial disclosures under FRCP 26 or otherwise.  In fact, the first time that Triboro learned of Luve's intention to rely upon Mr. Otterly was during the parties' preparation of the instant joint pre-trial order.  Thus, under FRCP 37(c), Luve may not rely upon Mr. Otterly in this action.

(x)   <u>Martha Estevez</u>.  Ms. Estevez is a former Triboro employee.  Triboro objects to Luve calling Ms. Estevez as a witness on the grounds that she is medically unable to testify.

(xi)   <u>Melissa Rigney Baxter</u>.  Pursuant to FRCP 37(c), Triboro objects to Luve calling Ms. Baxter as a witness at trial or relying upon her for any other purpose in this action.  Triboro has no record of Luve identifying Ms. Baxter as a witness in this action, in Luve's initial disclosures under FRCP 26 or otherwise.  In fact, the first time that Triboro learned of Luve's intention to rely upon Ms. Baxter was during the parties' preparation of the instant joint pre-trial

{05805/606499-000/01156488.1}

order.  Thus, under FRCP 37(c), Luve may not rely upon Ms. Baxter in this action.

(xii)   <u>Chellee Siewart</u>.  Pursuant to FRCP 37(c), Triboro objects to Luve calling Ms. Siewart as a witness at trial or relying upon her for any other purpose in this action.  Triboro has no record of Luve identifying Ms. Siewart as a witness in this action, in Luve's initial disclosures under FRCP 26 or otherwise.  In fact, the first time that Triboro learned of Luve's intention to rely upon Ms. Siewart was during the parties' preparation of the instant joint pre-trial order.  Thus, under FRCP 37(c), Luve may not rely upon Ms. Siewart in this action.

(xiii)   Corporate representative of Plaintiff Triboro.

Luve reserves the right to call rebuttal witnesses.  Luve further reserves the right to call any witnesses identified by Triboro directly or in discovery.

## DEPOSITION TESTIMONY

Based upon its present understanding of designated witnesses' availability to testify at trial, as presently advised, neither party intends to rely upon deposition testimony in its case-in-chief.  However, the Parties reserve the right to use the deposition testimony of any designated witness that subsequently becomes unavailable to testify at trial.  Both parties further reserve the right to use deposition testimony and video deposition testimony for impeachment purposes.

{05805/606499-000/01156488.1}

## EXHIBITS

A list of Triboro's exhibits is attached hereto as **Exhibit A**.[3]  Triboro reserves the right to use other exhibits for impeachment and rebuttal purposes.

A list of Luve's exhibits is attached hereto as **Exhibit B**.[4]  Luve reserves the right to use other exhibits for rebuttal purposes.

Both parties reserve the right to supplement the exhibits identified herein prior to the commencement of trial with any documents or things produced, or otherwise made available for inspection and copying, during the discovery period.

## RELIEF SOUGHT

### A.   Relief Sought By Triboro

On its claims, Triboro seeks an Order (i) directing specific performance of the ELA by Luve and (ii) awarding Triboro its damages caused by Luve's wrongful termination of the ELA.

#### 1.   Specific Performance

The basis for Triboro's request for specific performance of the ELA by Luve is that, as discussed *supra*, Luve did not have a valid basis to terminate the ELA.  As such, Luve's attempt to terminate the ELA was wrongful, and it should be Ordered to perform its obligations thereunder.  To the extent that Luve seeks to argue it has no obligation(s) to perform under the ELA because the ELA expired on September 30, 2009, the Court can Order Luve to continue its course of performance after purportedly terminating same.  Specifically, the Court can Order Luve to continue (i) accepting royalty payments from Triboro under the ELA and (ii) not

---

[3] Per Rule 3(A)(x) of the Court's Individual Rules of Practice, Luve has indicated its objections to certain Triboro exhibits by placing an asterisk next to each exhibit number in question.

[4] Per Rule 3(A)(x) of the Court's Individual Rules of Practice, Triboro has indicated its objections to certain Luve exhibits by placing an asterisk next to each exhibit number in question.

{05805/606499-000/01156488.1}

interfering with Triboro's manufacturing of the bath blanket under the ELA.

### 2. Damages

The basis for Triboro's request for an award of monetary damages is based on the parties' post-termination conduct.  Specifically, as discussed *supra*, Triboro continued paying Luve (and Luve accepted) royalties on its sales of the bath blanket based on the assumption that the ELA remained in full force and effect.  However, if the jury were to find that (i) Luve properly terminated the ELA or (ii) the ELA expired by its own terms on September 30, 2009, then Triboro had no obligation to continue making such royalty payments.  Accordingly, Triboro would be entitled to an accounting from Luve for all royalty payments it made to Luve after (i) Luve's alleged termination of the ELA or (ii) September 30, 2009.

On Luve's counterclaims, Triboro seeks an Order that it (i) did not breach the ELA; (ii) did not misappropriate Luve's "idea" for the Better Bath Line; (iii) did not convert Luve's "idea" for the Better Bath Line; and (iv) was not unjustly enriched by Luve's "idea" for the Better Bath Line.  The bases for Triboro's requests for relief on Luve's counterclaims are set forth in Triboro's "Statement of Defenses" section *infra*.

### B. Relief Sought By Luve

Luve as it relates to Triboro's claims is seeking a determination that it did not in fact breach the ELA and that Triboro breached the ELA first and that such breach was material and therefore Luve's termination of the ELA was justified. Luve as it relates to its own claims is seeking the following damages: Misappropriation Claims:

| Product Type | Gross Sales | Gross Margin | Net Amount |
|---|---|---|---|
| Valboa Blankets | $18,158,928.00 | 52% | $9,442,642.56 |
| Better Bath Line | $11,662,552.00 | 52% | $6,064,527.04 |
| Total | | | $15,507,169.6 |

The method of calculation is taking the historical sales data provided by Triboro's own internal financial records produced in discovery from products that composed the better bath line as set forth in Luve's pleadings and the profit margins that Triboro's own financial records claim that it achieved on those same products and performing a simple mathematical calculation of gross sales times profit margin to result the in the above stated amounts .

Conversion Claims/Unjust Enrichment Claims:

| Product Type | Gross Sales | Gross Margin | Net Amount |
|---|---|---|---|
| Valboa Blankets | $18,158,928.00 | 52% | $9,442,642.56 |
| Better Bath Line | $11,662,552.00 | 52% | $6,064,527.04 |
| Profits Off Luves | | | $2,738,490.00 |
| Total | | | $18,245,659.6 |

The method of calculation is taking the historical sales data provided by Triboro's own internal financial records produced in discovery from products that composed the better bath line as set forth in Luve's pleadings and the profit margins that Triboro's own financial records claim that it achieved on those same products and performing a simple mathematical calculation of gross sales times profit margin to result the in the above stated amounts.

Breach of Contract Claims: $2,738,490.00. The basis of which is set forth in the opinions and testimony of Don Smith and Amy Seckinger and supported by Triboro's own financial and accounting records produced in discovery for the Bath Luve items.

Compilation of Damages Sought by Luve

| Cause of Action | Damages |
|---|---|
| Misappropriation | $15,507,169.60 |
| Conversion | $18,245,659.60 |
| Breach of Contract | $2,738,490.00 |
| Unjust Enrichment | $18,245,659.60 |
| Attorney Fees | $750,000.00 through trial |
| Pre-Judgment Interest | $3,649,131.92 |
| **Total Damage Exposure (after election)** | **$21,894,791.52** |

29

## <u>CONSENT TO LESS THAN UNANIMOUS VERDICT</u>

The parties do not consent to a less than unanimous verdict.

CONSENTED TO:

|  |  |
|---|---|
| TRIBORO QUILT MANUF. CORP. | LUVE LLC |

By: /s/ Cameron S. Reuber            .     By: /s/ David A. Schiller                .

| Paul Fields | David A. Schiller |
|---|---|
| Cameron S. Reuber | THE SCHILLER LAW GROUP, PLLC |
| Jonathan W. Thomas | 2309 West Parker Road |
| LEASON ELLIS LLP | Plano, Texas 75023 |
| One Barker Avenue, Fifth Floor | T: (469) 467-9200 |
| White Plains, New York 10601 | F: (469) 467-9600 |
| T: (914) 288-0022 | Email: DavidS@SchillerLaw.com |
| F: (914) 288-0023 | |
| Email: Fields@LeasonEllis.com | |
| Email: Reuber@LeasonEllis.com | |
| Email: Thomas@LeasonEllis.com | |

| Dated: April 23, 2014 | Dated: April 23, 2014 |
|---|---|
|       White Plains, New York |       Plano, Texas |

| *Attorneys for Triboro* | *Attorneys for Luve* |
|---|---|

IT IS SO ORDERED:

Dated: _____, 2014
       White Plains, NY

_____

Vincent L. Briccetti, U.S.D.J.

{05805/606499-000/01156488.1}