UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

-------------------------------------------------------------X

TRIBORO QUILT MANUFACTURING
CORPORATION,

               Plaintiff

    -   against –

LUVE LLC,

              Defendant

_____X

INDEX NO. 10-CV-3604

**DECLARATION OF DAVID A. SCHILLER IN SUPPORT OF DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION IN LIMINE NUMBER 3**

## DECLARATION OF DAVID A. SCHILLER IN SUPPORT OF DEFENDANT'S  RESPONSE TO PLAINTIF'S MOTION IN LIMINE NUMBER 3

David A. Schiller hereby declares pursuant to 28 U.S.C. § 1746, that the following is true and correct.

1.      I am David A. Schiller.  I am of sound mind and over the age of eighteen years. I have personal knowledge of the matters stated in this Declaration by reason of being the attorney for Defendant. I submit this Declaration in support of Defendant's Motion to Strike Plaintiff's Expert.

2.      Attached as Exhibit 1 is a true and correct copy of excerpts from the deposition of Amy Seckkinger.

3.      Attached as Exhibit 2 is a true and correct copy of Exhibit 19 from the deposition of Amy Seckinger.

4.      Attached as Exhibit 3 is a true and correct copy of excerpts and exhibits from the 11/28/12 deposition of Richard White;

5.      Attached as Exhibit 4 is a true and correct copy of excerpts and exhibits from the 3/28/13 deposition of Joel Kaplan;

6.      Attached as Exhibit 5 is a true and correct copy of excerpts and exhibits from the 4/24/13 deposition of Richard White as corporate representative;

7.       I declare under penalty of perjury that the foregoing is true and correct.

Dated the 21st day of November 2014.

Respectfully Submitted

THE SCHILLER LAW GROUP, PLLC

David A. Schiller (DAS 4601)
3315 Silverstone Drive, Suite B
Plano, TX 75023
davids@schillerlaw.com
Ph. (469) 467-9200
Fax (469) 467-9600

## CERTIFICATE OF SERVICE

This is to certify that on this the 21st day of November, 2014, a true and correct copy of the foregoing instrument has been sent to all counsel of record via email by operation of the Court's ECF filing system, and in accordance with the Federal Rules of Civil Procedure.

David A. Schiller

# EXHIBIT 1

# EXHIBIT 1

**In the Matter Of:**

TRIBORO QUILT MFG vs. LUVE

Index No. 10-CV-3604

**AMY SECKINGER**

*April 26, 2013*

*Volume II*



800.211.DEPO (3376)
EsquireSolutions.com

Case 7:10-cv-03604-VB   Document 134   Filed 11/21/14   Page 5 of 49

AMY SECKINGER Volume II                           April 26, 2013
TRIBORO QUILT MFG vs. LUVE                                    577

1

2               C E R T I F I C A T E

3   STATE OF NEW YORK          )

4                      : ss.

5   COUNTY OF WESTCHESTER       )

6

7           I, JOAN WARNOCK, a Notary Public

8       within and for the State of New York, do

9       hereby certify:

10          That AMY SECKINGER, the witness

11      whose deposition is hereinbefore set

12      forth, was duly sworn by me and that

13      such deposition is a true record of the

14      testimony given by the witness.

15          I further certify that I am not

16      related to any of the parties to this

17      action by blood or marriage, and that I

18      am in no way interested in the outcome

19      of this matter.

20          IN WITNESS WHEREOF, I have hereunto

21      set my hand this 7th day of May, 2013.

22

23                  Joan Warnock

24                  JOAN WARNOCK

25



Case 7:10-cv-03604-VB   Document 134   Filed 11/21/14   Page 6 of 49

AMY SECKINGER Volume II                                    April 26, 2013
TRIBORO QUILT MFG vs. LUVE                                          322

```
 1                    A. Seckinger

 2        A.    The three.

 3        Q.    Which three, please?

 4        A.    I'm sorry.  The frog.

 5        Q.    Can you refer to the numbers?

 6        A.    Sure.

 7        Q.    Thanks.

 8        A.    Exhibit 17, Exhibit 16, and

 9   Exhibit 13.

10        Q.    And did you design Exhibit 17, 16,

11   and 13 yourself?

12        A.    I created the prototype that is --

13   if you put them together, you can tell the

14   prototype, and then through some

15   collaboration, the end product was finished.

16        Q.    And the collaboration was with

17   whom?

18        A.    The collaboration was with Daryl

19   Farrell, Richard White.  Joel Kaplan had a

20   point here and there.  Martha.

21        Q.    How about Kathleen Barczak?

22        A.    With these she did my -- took it,

23   and then we needed to have basically like the

24   design in our files, so then she took it and

25   just put it in a paper form.  But the
```



Case 7:10-cv-03604-VB   Document 134   Filed 11/21/14   Page 7 of 49

AMY SECKINGER Volume II                                    April 26, 2013
TRIBORO QUILT MFG vs. LUVE                                           323

1                     A. Seckinger

2    collaboration first was with Triboro.

3                    (Amy Seckinger Exhibit 19, Email

4          dated July 24, 2007, from Amy Seckinger

5          to Richard White, marked for

6          identification, as of this date.)

7          Q.   I show you what I've marked as

8    Exhibit 19.  Have you ever seen that document

9    before?  Can you tell me if you've seen this

10   document before?

11         A.   I have.

12         Q.   Can you identify what the first

13   page is?

14         A.   The first page is an email from me

15   to Richard White and Daryl Farrell.

16         Q.   And do you understand the email to

17   have an attachment?

18         A.   Yes.

19         Q.   Is there any reason to believe that

20   the document annexed to this email was not

21   the attachment that was provided?

22         A.   I'm sorry.  Why this wasn't

23   attached?

24         Q.   Do you have any reason to believe

25   that the invoice behind it isn't the invoice



Case 7:10-cv-03604-VB   Document 134   Filed 11/21/14   Page 8 of 49

AMY SECKINGER Volume II
TRIBORO QUILT MFG vs. LUVE
April 26, 2013
324

1                    A. Seckinger

2    that's referenced on the front of the

3    document?

4         A.    Umm.

5         Q.    And I'll represent to you that --

6         A.    This was done in June.

7         Q.    Right.

8         A.    This one from Kathy.  And this

9    invoice -- I do, because it says "Attachment

10   Design Invoice."  So wouldn't this attachment

11   -- there's nothing on here printed that it

12   is.  So I don't...

13        Q.    You don't have any reason to

14   believe that it wouldn't be.

15        A.    (Indicating).

16        Q.    Okay.  Does this generally outline

17   what Kathleen Barczak did for you in terms of

18   her part in the collaboration?

19        A.    Kathy, to make it very clear, Kathy

20   is my graphic designer illustrator.  I am not

21   an illustrator.  So I take all the designs.

22   I lay them out.  I tell the sizes of the

23   polka dots, the size of the argyle, to the

24   color scheme, to the sizes of the booties, to

25   the size that the puff needs to be.  So she



Case 7:10-cv-03604-VB   Document 134   Filed 11/21/14   Page 9 of 49

AMY SECKINGER Volume II                    April 26, 2013
TRIBORO QUILT MFG vs. LUVE                        325

1                    A. Seckinger

2    takes it and puts it all in.  So we had a

3    presentation of the line.

4         Q.   So her creative contribution

5    doesn't exist?

6         A.   No, her creative contribution --

7    she is an illustrator, just like Daryl

8    Farrell, as a merchandiser, she has other

9    illustrators.

10        Q.   So she contributed to the creative

11   aspects of the products identified in here,

12   the Bath Luve, the BL puffs, which we now

13   know are the BL --

14        A.   The Bath Luve was already created.

15   She just was putting those items into my

16   presentation.

17        Q.   Puffs, which we now know to be

18   Buddies.

19        A.   Um-hmm.

20        Q.   So we don't go down that road

21   again.  Robes, booties, hoodies, washcloths,

22   character hoodies.  And she contributed to

23   all of these?

24        A.   She implemented my ideas.

25        Q.   She implemented your ideas?



Case 7:10-cv-03604-VB   Document 134   Filed 11/21/14   Page 10 of 49

AMY SECKINGER Volume II                     April 26, 2013
TRIBORO QUILT MFG vs. LUVE                           326

1                    A. Seckinger

2        A.    Yes.

3        Q.    Did she have any creative

4    contributions to those ideas?  Because I

5    thought that you said no, and then you

6    corrected me.  I want to make sure I

7    understand exactly.  I don't want to put

8    words in your mouth.

9        A.    No.  Kathy is someone that takes my

10   ideas and implements them into -- so we have

11   it in a presentation.

12       Q.    So she has no creative

13   contributions?

14       A.    Well, I think she's a very creative

15   girl, and she puts that -- I could not do the

16   design work on a computer the way that she

17   can.  So yes, she is creative.

18       Q.    So like with Bath Luve characters,

19   the first bullet under Bath Luve characters

20   where it says "Brainstormed and developed."

21       A.    Brainstormed, she talked with me.

22   I sat with her next to her computer and would

23   talk it through.  She would draw the eye.

24   From my saying we need to create this foot, I

25   would draw it on a paper, she would do it.



Case 7:10-cv-03604-VB   Document 134   Filed 11/21/14   Page 11 of 49

AMY SECKINGER Volume II                                April 26, 2013
TRIBORO QUILT MFG vs. LUVE                                        327

```
 1                    A. Seckinger
 2    Then I would say, actually, we need to make
 3    it a little larger, so.
 4         Q.    Okay.
 5         A.    Yes.
 6         Q.    But you would agree with me that
 7    this invoice indicates that Kathleen Barczak
 8    contributed to the design of these products?
 9              MR. SCHILLER:   Object to form.
10         A.    She put my design on paper.
11         Q.    You can put that one aside.   Why
12    did you send this invoice to Richard White
13    and Daryl Farrell?
14         A.    Because we were developing a Bath
15    Luve line.   And through it they would say --
16    through our meetings that a girl Bath Luve
17    was really needed and necessary.   And so then
18    they would have me say, well, submit some of
19    the drawings in the line.   So I was showing a
20    complete design.   Then they rejected this
21    line.   And then, actually --
22         Q.    I was asking why are you sending
23    the invoice as opposed to the designs.   Was
24    Triboro supposed to pay these invoices?
25         A.    They said to me you work with your
```



Case 7:10-cv-03604-VB   Document 134   Filed 11/21/14   Page 12 of 49

AMY SECKINGER Volume II                                    April 26, 2013
TRIBORO QUILT MFG vs. LUVE                                          328

```
 1                    A. Seckinger
 2    designer, because they didn't feel that they
 3    had someone that was suitable.  And they said
 4    you have such a vision of where you want your
 5    line to be, you work with your person,
 6    because they even tried.  It was -- I have
 7    emails from Richard.  They even tried to
 8    create some other Bath Luves, and they looked
 9    awful, and Richard would respond saying these
10    would never see the daylight, we need you to
11    work with your designer.  So that's why Kathy
12    was even involved in this, because they
13    didn't have someone for me to work with.
14              MR. REUBER:  Move to strike as
15         nonresponsive.
16         Q.   My question is, are you looking to
17    Triboro to pay these invoices?
18         A.   Am I looking for them to pay?  They
19    paid them.
20         Q.   Thank you.  Did you send these
21    invoices to Triboro to be paid?
22         A.   They asked to have them, because we
23    are creating a line, and that was going to be
24    under the related works, and it was supposed
25    to be going out.
```



Case 7:10-cv-03604-VB   Document 134   Filed 11/21/14   Page 13 of 49

AMY SECKINGER Volume II                      April 26, 2013
TRIBORO QUILT MFG vs. LUVE                           329

1                    A. Seckinger

2        Q.    Did Triboro pay for all of Kathleen

3    Barczak's work on the Bath Luve line?

4        A.    No.

5        Q.    How much of Kathleen Barczak Design

6    LLC's invoices did Triboro pay to develop the

7    Bath Luve line?

8              MR. SCHILLER:   Objection.   Form.

9        A.    I would have to go back, because

10   there was things that we would work on, that

11   she would work on for me that I would show

12   them, but because they didn't go into

13   production, I just paid her.

14       Q.    More than 50 percent?

15       A.    This is back in '07.   I'm sorry.   I

16   would have to go back and look.

17       Q.    I'm just asking for your general

18   understanding.   Would it surprise you if it

19   was more than 50 percent?

20       A.    Say that again.   I'm sorry,

21   Cameron.   Before that, before the 50 percent.

22       Q.    If Kathleen Barczak billed Triboro

23   a hundred thousand dollars --

24       A.    Okay.

25       Q.    -- would it surprise you if Triboro



Case 7:10-cv-03604-VB   Document 134   Filed 11/21/14   Page 14 of 49

AMY SECKINGER Volume II                          April 26, 2013
TRIBORO QUILT MFG vs. LUVE                                 330

1              A. Seckinger

2    --

3         A.    Did she?  Is that what the number

4    is?

5         Q.    No.

6         A.    Oh.

7         Q.    I'm making it up.

8         A.    Okay.

9         Q.    If Kathleen Barczak billed Triboro

10   a hundred thousand dollars for her work --

11        A.    Right.

12        Q.    -- would it surprise you if Triboro

13   paid more than 50,000 of those invoices?

14        A.    This is all hearsay.  I don't like

15   having conversations like that here.

16        Q.    I'm just trying to narrow down --

17        A.    I know.  Cameron, it's from 2007.

18        Q.    Did Triboro pay a little or a lot?

19   How about that.

20        A.    They paid a little.

21        Q.    They paid a little.  So you paid

22   most of Kathleen Barczak's invoices?

23        A.    I would -- if we took Triboro's

24   invoices and my invoices, hands down, because

25   of my web site, my logo, all my stuff that I



Case 7:10-cv-03604-VB  Document 134  Filed 11/21/14  Page 15 of 49

AMY SECKINGER Volume II                    April 26, 2013
TRIBORO QUILT MFG vs. LUVE                          331

1                    A. Seckinger

2    had her do for me, I paid her for.

3         Q.   Did you have an agreement with

4    Triboro that Triboro would pay any part of

5    her invoices?

6         A.   In the contact it says that PR and

7    marketing and stuff like that, that they

8    would be able to -- they would be able to pay

9    -- they would pay for it, so.

10        Q.   So Triboro --

11        A.   Triboro didn't have anyone that was

12   suitable to do it.  That's why I had to bring

13   in my graphic person.

14        Q.   And Triboro --

15        A.   Because they wanted our vision.

16        Q.   And Triboro paid Kathleen Barczak

17   Design LLC pursuant to that?

18        A.   Some of it.

19        Q.   Some of it.  Okay.  And you can't

20   tell me how much they paid as you sit here

21   now?

22        A.   I can't, no.

23        Q.   Who could?

24        A.   We could go into, again, the

25   accounting.  It wouldn't be that hard.



Case 7:10-cv-03604-VB   Document 134   Filed 11/21/14   Page 16 of 49

AMY SECKINGER Volume II                           April 26, 2013
TRIBORO QUILT MFG vs. LUVE                                    332

```
 1                    A. Seckinger
 2          Q.    Did Kathleen Barczak assist with
 3     the production of the product labeling or
 4     packaging?
 5          A.    Labeling, yes.
 6          Q.    Did Fred Galinko help with the
 7     product packaging?
 8          A.    Fred did the creative wheel.
 9          Q.    Fred did the creative wheel?
10          A.    Yes.
11          Q.    Entirely?
12          A.    Entirely.
13          Q.    When did Luve begin marketing the
14     Bath Luve?
15          A.    I started marketing it right before
16     it launched for Kohl's.
17          Q.    Which was in 2008?
18          A.    No.  I thought it was 2007, but I
19     think I'm confused because of the mixup that
20     they promised me it was going to be in
21     stores, and then they didn't make the sale.
22          Q.    So to the best of your knowledge
23     and recollection, when was the first time a
24     Bath Luve product showed up on a shelf in a
25     retail store?
```



# EXHIBIT 2

# EXHIBIT 2

**In the Matter Of:**

TRIBORO QUILT MFG vs. LUVE

Index No. 10-CV-3604

**AMY SECKINGER**

*April 26, 2013*

*Volume II*



800.211.DEPO (3376)
EsquireSolutions.com

Case 7:10-cv-03604-VB   Document 134   Filed 11/21/14   Page 19 of 49

AMY SECKINGER Volume II                              April 26, 2013
TRIBORO QUILT MFG vs. LUVE                                      577

1

2                   C E R T I F I C A T E

3      STATE OF NEW YORK          )

4                              : ss.

5      COUNTY OF WESTCHESTER      )

6

7              I, JOAN WARNOCK, a Notary Public

8          within and for the State of New York, do

9          hereby certify:

10             That AMY SECKINGER, the witness

11         whose deposition is hereinbefore set

12         forth, was duly sworn by me and that

13         such deposition is a true record of the

14         testimony given by the witness.

15             I further certify that I am not

16         related to any of the parties to this

17         action by blood or marriage, and that I

18         am in no way interested in the outcome

19         of this matter.

20             IN WITNESS WHEREOF, I have hereunto

21         set my hand this 7th day of May, 2013.

22

23                   

24                   JOAN WARNOCK

25

| | |
|---|---|
| **From:** | amyseckinger@aol.com |
| **Sent:** | Tuesday, July 24, 2007 9:06 AM |
| : | Richard White; dfarrell@cuddletime.com |
| **Subject:** | Design invoice |
| **Attachments:** | design invoice.pdf |

Richard and Daryl:

Here is Kathy's invoice for all the work she put in on working on the Bath Luve line.  I held  off on sending her final bill, because I didn't know if she was going to be tweaking any of the designs.   Here address is on the invoice, can you please mail it directly to her.

Thank you,

Amy Seckinger

---

AOL now offers free email to everyone. Find out more about what's free from AOL at **AOL.com**.

Amy Seckinger – Exhibit 19
April 26, 2013

1



**Kathleen Barczak Design, llc**
2484 North 96th Street  Wauwatosa, WI 53226
p 414.479.0284 c 414.640.3043  kbarczak@wi.rr.com  kathleenbarczakdesign.com

## INVOICE

Client Name:      TRIBORO QUILT Mfg. Corp. - Amy Seckinger Design, LLC
Date:             6 June 2007

Description of Services:    Bath Luve Line Development for Triboro

BATH LUVE LINE EXTENTION: (16.50 hours)

- Meetings to develop the Bath Luve line including: Bath Luve's, BL puffs, BL robes,
  BL booties, BL XL hoodies, BL wash clothes and BL character hoodies.
- Layout and design for argyle designs, BL dragonfly, and BL Character Hoodies (with changes).
- Developed an overall view of the Bath Luve Lines both character and argyle.

BATH LUVE CHARACTERS: (13.25 hours)

- Meetings to develop the direction of the characters for production.  Brainstormed and developed
  the BL dragonfly and the character towels for presentation.
- Computer Illustrations of Bath Luve Frog, Fish, Duck and Dragonfly.
- Computer Illustrations of BL Puffs: Frog, Fish, Duck and Dragonfly for presentation.
- Layout and design of Bath Luve's, BL Puffs, BL Robes, BL Booties, BL XL Hoodies,
  BL Wash clothes (with multiple changes).

BATH LUVE MARKETING SUPPORT: (9.75 hours)

- Designed and produced thank you cards.
- CD cover designs, BL label designs, BL ribbon designs.
- Designed labels for blankets.

| | |
|---|---:|
| Sub Total | $3,357.50 |
| Bath Luve gift for Kohl's client including packaging | $422.50 |
| Misc materials | $69.00 |
| **TOTAL BILLINGS** | $3,849.00 |

**Due Upon Receipt.**
1 1/2% Charge to all accounts over 30 days (18% per annum) or maximum % permitted by applicable law if less.
WE MUST BE NOTIFIED OF ANY DISCREPANCIES ON THIS INVOICE WITHIN 10 DAYS OF RECEIVING INVOICE.



Kathleen Barczak Design, llc
2484 North 96th Street  Wauwatosa, WI 53226
p 414.479.0284 c 414.640.3043  kbarczak@wi.rr.com  kathleenbarczakdesign.com

## INVOICE

Client Name:     TRIBORO QUILT Mfg. Corp. - Amy Seckinger Design, LLC
Date:            6 June 2007

Description of Services:     Bath Luve Line Development for Triboro

BATH LUVE LINE EXTENTION: (16.50 hours)

- Meetings to develop the Bath Luve line including: Bath Luve's, BL puffs, BL robes,
  BL booties, BL XL hoodies, BL wash clothes and BL character hoodies.
- Layout and design for argyle designs, BL dragonfly, and BL Character Hoodies (with changes).
- Developed an overall view of the Bath Luve Lines both character and argyle.

BATH LUVE CHARACTERS: (13.25 hours)

- Meetings to develop the direction of the characters for production.  Brainstormed and developed
  the BL dragonfly and the character towels for presentation.
- Computer Illustrations of Bath Luve Frog, Fish, Duck and Dragonfly.
- Computer Illustrations of BL Puffs:  Frog, Fish, Duck and Dragonfly for presentation.
- Layout and design of Bath Luve's, BL Puffs, BL Robes, BL Booties, BL XL Hoodies,
  BL Wash clothes (with multiple changes).

BATH LUVE MARKETING SUPPORT: (9.75 hours)

- Designed and produced thank you cards.
- CD cover designs, BL label designs, BL ribbon designs.
- Designed labels for blankets.

| | |
|---|---|
| Sub Total | $3,357.50 |
| Bath Luve gift for Kohl's client including packaging | $422.50 |
| Misc materials | $69.00 |
| TOTAL BILLINGS | $3,849.00 |

**Due Upon Receipt.**
1 1/2% Charge to all accounts over 30 days (18% per annum) or maximum % permitted by applicable law if less.
WE MUST BE NOTIFIED OF ANY DISCREPANCIES ON THIS INVOICE WITHIN 10 DAYS OF RECEIVING INVOICE.

# EXHIBIT 3

# EXHIBIT 3

**In the Matter Of:**

TRIBORO QUILT vs. LUVE

10-CV-3604

---

**RICHARD WHITE**

*November 28, 2012*

---



800.211.DEPO (3376)
EsquireSolutions.com

RICHARD WHITE                                  November 28, 2012
TRIBORO QUILT vs. LUVE                                       277

```
 1

 2                  C E R T I F I C A T E

 3   STATE OF NEW YORK      )

 4                          : ss.

 5   COUNTY OF DUTCHESS     )

 6

 7          I, ANGELA GRANT, a Notary Public

 8       within and for the State of New York, do

 9       hereby certify:

10          That RICHARD WHITE, the witness

11       whose deposition is hereinbefore set

12       forth, was duly sworn by me and that

13       such deposition is a true record of the

14       testimony given by the witness.

15          I further certify that I am not

16       related to any of the parties to this

17       action by blood or marriage, and that I

18       am in no way interested in the outcome

19       of this matter.

20          IN WITNESS WHEREOF, I have hereunto

21       set my hand this 10th day of December,

22       2012.

23

24                      _____

25                           ANGELA GRANT
```



Case 7:10-cv-03604-VB   Document 134   Filed 11/21/14   Page 26 of 49

RICHARD WHITE                                    November 28, 2012
TRIBORO QUILT vs. LUVE                                        160

```
  1                       White
  2   to -- 16.
  3           Have you seen this document before?
  4       A.   I believe I have.
  5       Q.   In the second paragraph there's a
  6   reference from Mr. Best, Luve, LLC's prior
  7   counsel.  He says "You will recall that on
  8   July 17th," do you see where I'm at?
  9       A.   Yes.
 10       Q.   -- "Thomas Otterlee of my firm wrote
 11   a letter detailing some of the ways in which
 12   Triboro has incorrectly identified Bath Luve
 13   products."
 14           Do you recall there being an issue
 15   in July of 2009 regarding the identification
 16   of the Bath Luve products?
 17       A.   No.  But if, if there are documents
 18   that will help refresh my memory, I'd be
 19   pleased to read them.
 20       Q.   You see the next sentence says, "On
 21   August 10, 2009 you responded that quote
 22   "despite Triboro's best effort short of
 23   ceasing shipments to correct inaccurate
 24   representations in catalogs and websites,
 25   retailers have not been cooperative and
```



```
  1                        White
  2    further harassment to exact the changes is
  3    likely to result in ill will and subsequent
  4    loss of sales."
  5            Do you see that?
  6       A.   Yes.  Now I recall the conversation.
  7       Q.   Is that in line with what you were
  8    discussing with me earlier about Target is
  9    very -- is one of those retailers that's
 10    difficult to deal with on the packaging side?
 11       A.   No.  This is a different issue.
 12       Q.   What issue is this?
 13       A.   This issue had to do with how
 14    retailers were representing product on their
 15    websites or catalogs.  And the correspondence,
 16    as I recall, was to communicate that.  It's
 17    very difficult to get retailers to make
 18    changes to their system.  You can ask.  You
 19    can beg and plead.  Sometimes they'll do it;
 20    sometimes they don't.  And that as was
 21    described in the letter here short of ceasing
 22    shipments, it's very difficult to give
 23    retailers ultimatums.  Unfortunately, there's
 24    too few retailers and too many suppliers these
 25    days.
```



Case 7:10-cv-03604-VB   Document 134   Filed 11/21/14   Page 28 of 49

RICHARD WHITE                                    November 28, 2012
TRIBORO QUILT vs. LUVE                                          162

```
  1                        White

  2        Q.   Here the letter goes on to request

  3   all documents related to Triboro's best

  4   purported best efforts to correct inaccurate

  5   representations.

  6             Do you know if any effort was ever

  7   made to provide that information to Luve, LLC?

  8        A.   I don't recall whether it was or it

  9   wasn't, but there's probably other

 10   correspondence from Louis DelJuidice that's

 11   been produced that would identify the efforts.

 12   Because I believe the issue that was related

 13   here was that the retailers were not calling

 14   product a Bath Luve or not as identifying it

 15   as Luve, LLC.  And I don't believe that there

 16   was anything in the agreement that required

 17   that they do that, nor would they necessarily

 18   be willing to honor an agreement that we had

 19   related to a potentially patentable product.

 20        Q.   Do you recall or were you aware that

 21   Triboro refused to, in fact, provide any

 22   information about their efforts to resolve

 23   those issues about properly representing or

 24   marking the products?

 25        A.   No.  I don't recall that.
```





Michael Best & Friedrich LLP
Attorneys at Law
Two Riverwood Place
N19 W24133 Riverwood Drive
Suite 200
Waukesha, WI 53188-1174
Phone 262.956.6560
Fax 262.956.6565

Lee M. Seese
Direct 414.223.2502
Email lmseese@michaelbest.com

January 8, 2010

**Via Email:  ldeljuidice@mwe.com**
**Original Via Certified U.S. Mail:**

Louis J. DelJuidice, Esq.
McDermott Will & Emery
340 Madison Avenue
New York, NY 10173-1922

Re:    Notice of Breach

Dear Louis:

I write this letter to provide Notice of Breach under Section 12.2.3 of the parties' August 30, 2006 License Agreement (the "Agreement").  Under Section 3.2.4 of the Agreement, Triboro is required to provide, among other things, an updated sales and marketing report, including order backlogs, at the end of each quarter.   Triboro has provided only one sales and marketing report during the course of the entire Agreement.  Bath Luve demands that Triboro immediately cure this breach by providing all sales and marketing reports from August 30, 2006 to the present.  Bath Luve further specifically demands that Triboro cure its most recent breach of the Agreement by immediately providing an updated sales and marketing report for the quarter ending September 30, 2009.

In addition to the sales and marketing reports, Bath Luve demands that you provide all documents, correspondence and communications between Triboro and any clients regarding the marking and/or identification of Bath Luve products.  You will recall that on July 17, 2009, Thomas Otterlee of my firm wrote a letter detailing some of the ways in which Triboro has incorrectly identified Bath Luve products.  On August 10, 2009, you responded that "despite Triboro's best efforts, short of ceasing shipments, to correct inaccurate representations in catalogs and websites, retailers have not been cooperative, and further harassment to exact the changes is likely to result in ill will and subsequent loss of sales." Bath Luve requests all documents related to Triboro's purported "best efforts" to correct inaccurate representations, as well as any documents between Triboro and its customers regarding how products should be marked.  Bath Luve also requests that you identify all non-written communications with any retailers or clients related to the issue of properly identifying Bath Luve products.

Richard White Deposition
Exhibit 16



Louis J. DelJuidice, Esq.
McDermott Will & Emery
January 8, 2010
Page 2


I look forward to your prompt response regarding these issues.

Sincerely,

**MICHAEL BEST & FRIEDRICH LLP**

Lee M. Seese

LMS:bek

cc:     Mr. Richard White


N:\CLIENT\026474\9003\F0543476.1

# EXHIBIT 4

# EXHIBIT 4

**In the Matter Of:**

TRIBORO VS. LUVE

10CV3604

---

**JOEL KAPLAN**

*March 28, 2013*

---



800.211.DEPO (3376)
EsquireSolutions.com

1

2                    C E R T I F I C A T E

3   STATE OF NEW YORK            )

4                               : ss.

5   COUNTY OF WESTCHESTER        )

6

7          I, JOAN WARNOCK, a Notary Public

8      within and for the State of New York, do

9      hereby certify:

10          That JOEL KAPLAN, the witness whose

11      deposition is hereinbefore set forth,

12      was duly sworn by me and that such

13      deposition is a true record of the

14      testimony given by the witness.

15          I further certify that I am not

16      related to any of the parties to this

17      action by blood or marriage, and that I

18      am in no way interested in the outcome

19      of this matter.

20          IN WITNESS WHEREOF, I have hereunto

21      set my hand this 5th day of April, 2013.

22          

23      _____

24          JOAN WARNOCK

25

| 1 | J. Kaplan |

2   Exhibit Number 4.  That's a letter from

3   Mr. DelJuidice dated February 5th, 2010, to a

4   Lee Seese, who was then counsel for Luve LLC.

5           Have you seen this document before?

6       A.   I don't recall if I saw it or not,

7   sir.

8       Q.   Were there ever any amendments to

9   Exhibit Number 2, the Exclusive License

10  Agreement?

11      A.   Not that I recall, but I don't

12  recall the details of the license.  Mr. White

13  would be a better person to ask that of.

14      Q.   Okay.

15          MR. SCHILLER:  Counsel.  I only

16      have one copy of these next couple of

17      documents.  I ran into a little copy

18      problem last night.  But if you want to

19      review those before I ask him any

20      questions.  Y'all have these.  These

21      have been produced to you quite some

22      time ago.

23          (Joel Kaplan Exhibit 5, Letter

24      dated July 17, 2009, to Joel Kaplan from

25      Thomas Otterlee, marked for



```
  1                     J. Kaplan
  2           identification, as of this date.)
  3           Q.    You've been handed what has been
  4     marked, Mr. Kaplan, Exhibit Number 5.  It's a
  5     letter --
  6               MR. FIELDS:  Excuse me.  Do you
  7           have your production number on these?
  8               MR. SCHILLER:  I can tell you
  9           exactly when it was produced and what
 10           request it was produced from.
 11               MR. FIELDS:  All I need is the
 12           production number so we can make a copy
 13           when we get back.
 14               MR. SCHILLER:  The real question,
 15           Paul, is whether I have the Bates
 16           labeled copies in here.  We produced our
 17           documents responsive to specific
 18           requests, so I can tell you which
 19           request it was in response to as soon as
 20           I pull this up.  As soon as my computer
 21           warms up, Paul, I'll get you that.
 22               MR. FIELDS:  All right.  You can
 23           give it to me later.
 24               MR. SCHILLER:  That's fine.
 25           Q.   Mr. Kaplan, that is a letter that
```



```
 1                        J. Kaplan
 2    is addressed to you; correct?
 3         A.    Yes, sir, it is.
 4         Q.    And it's dated in July of 2009;
 5    correct?
 6         A.    Yes, sir, it is.
 7         Q.    Do you recall receiving this
 8    letter?
 9         A.    This letter I do recall.
10         Q.    And that letter specifically spells
11    out certain failures that Triboro had with
12    regards to the Exclusive License Agreement,
13    at least those were being alleged; correct?
14              MR. FIELDS:   Objection.   The letter
15         speaks for itself.
16         A.    You have to ask the question
17    differently, sir, because I have a different
18    opinion on how I read this letter.
19         Q.    Do you read that letter as being a
20    notice letter to Triboro putting them on
21    notice of certain failures they had with
22    regard to complying with the Exclusive
23    License Agreement?
24         A.    I don't interpret the letter that
25    way at all, sir.
```



| 1 | J. Kaplan |

2       Q.   All right.  If you'll hand the

3   letter to me briefly.  In the second

4   paragraph they state -- this is from Michael

5   Best & Associates.  You understood that to be

6   the lawyers, Thomas Otterlee for Luve LLC?

7       A.   Yes, sir.

8       Q.   In his second paragraph he says,

9   "Triboro has not used commercially reasonable

10   efforts to maximize the sales of the licensed

11   Luve products."

12        Do you believe that that is

13   anything other than telling Triboro you

14   haven't complied with the requirement to use

15   commercially reasonable efforts?

16       A.   Absolutely, because we used --

17       Q.   I'm not asking you to agree with

18   it, Mr. Kaplan.  I'm asking you did you

19   understand they were saying you hadn't done

20   what you were supposed to do under the

21   Exclusive License Agreement?

22        MR. FIELDS:  Objection on a number

23        of grounds.  Number one, it assumes

24        facts not in evidence that there was an

25        obligation to use commercially



| 1 | J. Kaplan |

2   properly, you don't have an excuse other than

3   it was a mistake by someone; correct?

4        A.   In this case, sir, yes.   In fact,

5   not just a mistake, but a serious mistake.

6   It's a clear oversight.

7             (Joel Kaplan Exhibit 6, Letter

8        dated August 10, 2009, to Thomas

9        Otterlee from Louis DelJuidice, marked

10       for identification, as of this date.)

11       Q.   I hand you what has been marked as

12   Exhibit Number 6.   Have you seen this

13   document before?

14       A.   Okay.   I'm sorry.   Again, your

15   question, sir?

16       Q.   Have you seen that document before?

17       A.   This document I've seen, yes, sir.

18       Q.   Is that a document responding to

19   Exhibit Number 5 on behalf of Triboro?

20       A.   I believe it is.

21       Q.   Is there anything in Exhibit

22   Number 6 that you personally disagree with?

23       A.   In terms of the general

24   representations made, no, sir.

25       Q.   Did you ever receive any type of



# MICHAEL BEST
## & FRIEDRICH LLP

Michael Best & Friedrich LLP
Attorneys at Law
Two Riverwood Place
N19 W24133 Riverwood Drive
Suite 200
Waukesha, WI  53188-1174
Phone  262.956.6560
Fax  262.956.6565

Thomas J. Otterlee
Direct  262.956.6523
Email  tjotterlee@michaelbest.com

July 17, 2009

Mr. Joel Kaplan
Triboro Quilt Manufacturing Corporation
172 South Broadway
White Plains, NY 10605

Re:   Termination of Agreement between Luve LLC and Triboro Quilt Manufacturing
      Corporation
      File No. 026474-9001

Dear Mr. Kaplan:

As you are aware, Triboro Quilt Manufacturing Corporation (Triboro) and Luve LLC (Luve) have cooperated under an Exclusive License Agreement executed August 30, 2006 (the Agreement) to market and sell products developed by Luve and manufactured by Triboro. However, events of the last several months have caused Luve great concern.

Specifically, Triboro has not used commercially reasonable efforts to maximize the sale of licensed Luve products. For example, potential customers that request pricing information on Luve brand products are directed to www.cuddletime.com, which includes a full Triboro catalog that contains Luve products near the back with no pricing information. The catalog also has no descriptions, dimensions, fabric content or "patent pending" note. Luve LLC is also not mentioned in association with the products. Furthermore, Luve LLC has invested in professional photography of the products. Those photos have been made available to Triboro. However, the current catalog includes unprofessional and unacceptable photography. In addition, Luve has asked that the Luve brand products be included on a Triboro website to enhance visibility and sales. Richard White stated in an e-mail that this would occur by the end of 2006, however it is yet to occur.

Even more troubling, Triboro has failed on numerous occasions to comply with Luve requests regarding the proper use of the Luve trademark. For example, Triboro failed to provide Luve, and specifically Ms. Seckinger with sample products for review and approval in a timely fashion during the development of the Bath Luve Pink Fish. As early as February 24, 2009 Donna Slabbekorn was working on this development. Ms. Seckinger received a sample and immediately provided comments on March 20, 2009. In response to Ms. Seckinger's comments, she was told "we don't have time to make any changes – production is starting now as this is shipping in May." However, an e-mail received the week of June 15 indicated that the product would not be available until mid-July. In addition, a Bath Luve Buddy Pink Fish was released and advertised in your catalog before Ms. Seckinger ever received a sample or had an opportunity to comment. Providing Luve with samples at a point in development where Luve's

Joel Kaplan Deposition
Exhibit 5

# MICHAEL BEST
### & FRIEDRICH LLP

Mr. Joel Kaplan
July 17, 2009
Page 2

input is irrelevant does not provide Luve with the necessary and contractually required control of the nature and quality of the products produced under the Luve trademark.

In addition to failing to provide Luve the opportunity to review and comment on new products sold under the Luve trademark, Triboro has also marketed or allowed others to market Luve products that were incorrectly identified as Triboro or Just Born brand products. For example, Amazon.com, lists Luve LLC brand hooded towels under the name "Just Born Bath Luve Hooded Towels". On the One Step Ahead web site, the full product description lists Triboro Quilt as the brand. On the Babies R Us web site, www.babiesrus.com, the Bath Luve is listed as "by: Just Born." In addition to the incorrect identification of the Luve LLC products, none of the sites identify the products as "patent pending" or as licensed product as required by Section 7.2 of the Agreement.

In an effort to resolve these issues, Ms. Seckinger attempted to schedule a meeting with Mr. Joel Kaplan as early as April 28, 2009. Ms. Seckinger followed-up several times and as of yet has not been able to find an opening in Mr. Kaplan's schedule or had any direct correspondence from him in response to her requests.

In light of the foregoing, it is Luve's contention that Triboro has breached the agreement. Specifically, Triboro has failed to provide Luve with samples of the product, packaging and promotional material for review and discussion with Triboro as is required under Section 7.1 of the Agreement.

In addition, Luve contends that Triboro has failed to use commercially reasonable efforts to maximize the sales of the licensed products as required under Section 12.2.4. In view of this, Luve is terminating the agreement as of the date of this letter. If Triboro wishes to contest this decision, this letter should be considered notice beginning the 30-day right to cure period outlined in Section 12.2.3 of the Agreement.

If you have any questions or wish to discuss any outstanding issues, please contact me immediately.

Very truly yours,

MICHAEL BEST & FRIEDRICH LLP

Thomas J. Otterlee

cc.   Mr. Richard White
      Louis DelJuidice, Esq.
      Ms. Amy Seckinger

# DARBY & DARBY
PROFESSIONAL CORPORATION

INTELLECTUAL PROPERTY LAW

NEW YORK
7 WORLD TRADE CENTER
250 GREENWICH STREET
NEW YORK, NY 10007-0042
TEL 212.527.7700
FAX 212.527.7701
www.darbylaw.com

NEW YORK
SEATTLE
WASHINGTON, D.C.
SAN JOSE
PALM BEACH GARDENS
FRANKFURT

August 10, 2009

Reference:    07670/8202314-000

Louis J. DelJuidice
ATTORNEY AT LAW
212.527.7791
ldeljuidice@darbylaw.com

**VIA E-MAIL TOTTERLEE@MICHAELBEST.COM**
*Confirmation Copy Via Federal Express*

Thomas J. Otterlee, Esq.
Michael Best & Friedrich LLP
Two Riverwood Place
NW19 W24133 Riverwood Drive
Suite 200
Waukesha, WI  53188-1174

Re:    Letter of July 17, 2009 with notice of Termination of Agreement between
       Luve LLC and Triboro Quilt Manufacturing
       Your File No. 026474-9001

Dear Mr. Otterlee:

My client and I are in receipt of your letter of July 17, 2009 alleging that Triboro Quilt Manufacturing ("Triboro") is in breach of the Exclusive License Agreement entered into with Luve LLC ( "Luve") on August 30, 2006 (the "Agreement"). First and foremost, we take the position, supported by at least the facts below, that Triboro has not breached the Agreement.  All of Triboro's actions have been consistent with the terms of the Agreement.

Further, pursuant to Section 12.2.3 of the Agreement, if Luve still maintains that Triboro is in breach, this letter can be considered the notice of cure within the 30 day period.

The Agreement grants an exclusive license for Triboro to manufacture, develop and sell Luve bath related products, and more specifically the bath cover covered under U.S. Patent Application No. 11/774,475.  The areas of concern cited in your letter primarily focus on three sections of the contract, Sections 7.1, 7.2 and 12.2.4.  We address each in turn below.

Regarding Section 7.1, it clearly states that Triboro has "final determination of product, packaging and promotional material."  Triboro has executed the product, packaging and promotional material using the same methods that it does for the other products and brands it successfully markets. Ms. Seckinger's comments have been sought and will be considered, but ultimately the decision will be Triboro's.

# DARBY & DARBY

Thomas J. Otterlee, Esq.
August 10, 2009
Page 2

Turning to the "Pink Fish" issue as outlined in your letter, it was unfortunate timing that Ms. Seckinger's request for design changes could not be addressed. However, a major commercial retailer had already approved the product for purchase and required a short delivery window. Shipment from the factory in May was required to meet the July in-store date, due to logistical lead time. Further discussion with the Buyer to seek approval for changes to a product already approved would have put the order at risk and endangered our relationship with the Buyer.

Section 7.1 was specifically drafted with this type of situation in mind, as it is typical in the course of business that a retailer sees a product and approves it and wants shipment quickly.

Triboro is compliant with Section 7.2 with respect to the markings required to notify the public that the bath cover product is Patent Pending and licensed by Luve, LLC. Triboro marks the product and/or packaging in the normal course business.

Ms. Seckinger's unhappiness with the way in which retailers market the product is unfortunate. Despite Triboro's best efforts, short of ceasing shipments, to correct inaccurate representations in catalogs and websites, retailers have not been cooperative, and further harassment to exact the changes is likely to result in ill will and subsequent loss of sales.

Regarding Section 12.2.4 and the allegation that Triboro has not used commercially reasonable efforts to maximize sales, Triboro uses the same, if not greater, level of commercial efforts in marketing the Luve products as it does for the rest of its product lines.

Turning to your contention regarding Triboro's catalogue, further investigation would reveal that every product in the catalogue has similar photographs and descriptions. Note that Triboro is not a retailer but a supplier. Triboro's catalogue reflects the fact that exact pricing and product sizes may vary depending on the requirements of a particular retailer and Triboro does not sell to the general public.

Triboro further has used greater commercial efforts in marketing the Luve line in comparison with other products offered by Triboro. For your consideration, Triboro offers the following facts:

- Triboro has exhibited Luve products at the last three industry trade shows, featuring the product in a prime location at the front of the booth, with

**DARBY &
DARBY**

video showing the product.   Further, Triboro paid for Ms. Seckinger's expenses to attend the show.

- Triboro has made presentations to all key accounts and has made sales to Wal Mart, Kohl's, Babies R Us, Buy Buy Baby, Burlington Coat Factory, Amazon, One Step Ahead and various other retailers.

- Triboro designed the bath cover using Disney characters in an attempt to market the product as part of bath textile programs at Babies R Us and Wal Mart.

- Triboro developed robes, hooded towels and washcloths to expand the range of product offered under the Luve trademark and has sold some of these items to major accounts.

These are just a few examples that clearly show that Triboro has used commercially reasonable efforts to maximize sales of the licensed product. Further evidence can be provided upon request.

Triboro contests Luve's notice of termination for breach, and as stated above, has not breached the Agreement. Triboro has honored, and will continue to honor, its side of Agreement and expects Luve to continue honoring its part of the Agreement as written.

If you have any questions, require additional information, or wish to discuss any of the above further, please feel free to contact me at your earliest convenience.

Very truly yours,

Louis J. DelJuidice

cc:   Mr. Joel Kaplan
      Mr. Richard White

# EXHIBIT 5

# EXHIBIT 5

**In the Matter Of:**

TRIBORO VS. LUVE

10-CV-3604

---

**RICHARD WHITE**

*April 24, 2013*

---



ESQUIRE
SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

RICHARD WHITE
TRIBORO VS. LUVE

April 24, 2013
240

1

2                  C E R T I F I C A T E

3    STATE OF NEW YORK            )

4                           : ss.

5    COUNTY OF WESTCHESTER        )

6

7           I, JOAN WARNOCK, a Notary Public

8        within and for the State of New York, do

9        hereby certify:

10          That RICHARD WHITE, the witness

11       whose deposition is hereinbefore set

12       forth, was duly sworn by me and that

13       such deposition is a true record of the

14       testimony given by the witness.

15          I further certify that I am not

16       related to any of the parties to this

17       action by blood or marriage, and that I

18       am in no way interested in the outcome

19       of this matter.

20          IN WITNESS WHEREOF, I have hereunto

21       set my hand this 3rd day of May, 2013.

22       

23       _____

24                JOAN WARNOCK

25

| 1 | R. White |
|---|---|

2    A.    The Soothe Time Splash Soother,

3  which was produced -- I believe it's been

4  maybe eighteen months or two years ago, did

5  not have markings on it, and it should have

6  had markings on it per the agreement.

7    Q.    And that would have been post

8  Corporate Rep Exhibit Number 2 where Mr. Best

9  -- Mr. Otterlee from Michael Best put Triboro

10  on notice that it was not meeting the marking

11  requirements; correct?

12    A.    I would have to confirm the dates

13  that that was actually done, but it's

14  possible that that's the case, yes.

15    Q.    If the Soothe Time Splashers, the

16  ones that have been marked either in your

17  deposition or the other depositions that

18  we've gone through, have a copyright on it

19  2010 for Triboro date, and that letter

20  Exhibit Number 2 for the corporate rep is

21  January of 2010, don't you think it's most

22  likely that those things were done post

23  January 8, 2010?

24    A.    Based on the percentages, yes,

25  because this was January 8th.  So unless it





MICHAEL BEST
— & FRIEDRICH LLP —

Michael Best & Friedrich LLP
Attorneys at Law
Two Riverwood Place
N19 W24133 Riverwood Drive
Suite 200
Waukesha, WI 53188-1174
Phone 262.956.6560
Fax 262.956.6565

Lee M. Seese
Direct 414.223.2502
Email lmseese@michaelbest.com

January 8, 2010

**Via Email: ldeljuidice@mwe.com**
**Original Via Certified U.S. Mail:**

Louis J. DelJuidice, Esq.
McDermott Will & Emery
340 Madison Avenue
New York, NY 10173-1922

Re:    Notice of Breach

Dear Louis:

I write this letter to provide Notice of Breach under Section 12.2.3 of the parties' August 30, 2006 License Agreement (the "Agreement"). Under Section 3.2.4 of the Agreement, Triboro is required to provide, among other things, an updated sales and marketing report, including order backlogs, at the end of each quarter. Triboro has provided only one sales and marketing report during the course of the entire Agreement. Bath Luve demands that Triboro immediately cure this breach by providing all sales and marketing reports from August 30, 2006 to the present. Bath Luve further specifically demands that Triboro cure its most recent breach of the Agreement by immediately providing an updated sales and marketing report for the quarter ending September 30, 2009.

In addition to the sales and marketing reports, Bath Luve demands that you provide all documents, correspondence and communications between Triboro and any clients regarding the marking and/or identification of Bath Luve products. You will recall that on July 17, 2009, Thomas Otterlee of my firm wrote a letter detailing some of the ways in which Triboro has incorrectly identified Bath Luve products. On August 10, 2009, you responded that "despite Triboro's best efforts, short of ceasing shipments, to correct inaccurate representations in catalogs and websites, retailers have not been cooperative, and further harassment to exact the changes is likely to result in ill will and subsequent loss of sales." Bath Luve requests all documents related to Triboro's purported "best efforts" to correct inaccurate representations, as well as any documents between Triboro and its customers regarding how products should be marked. Bath Luve also requests that you identify all non-written communications with any retailers or clients related to the issue of properly identifying Bath Luve products.

Richard White Deposition
Exhibit 16

Corporate Rep
Deposition Exhibit 2

CONFIDENTIAL
michaelbest 00069

# MICHAEL BEST

## & FRIEDRICH LLP

Louis J. DelJuidice, Esq.
McDermott Will & Emery
January 8, 2010
Page 2

I look forward to your prompt response regarding these issues.

Sincerely,

MICHAEL BEST & FRIEDRICH LLP

Lee M. Seese

LMS:bek

cc:    Mr. Richard White

N:\CLIENT\026474\9003\F0543476.1